**Karl PIHL, et al., Plaintiffs, Appellants,**

v.

**MASSACHUSETTS DEPARTMENT OF EDUCATION, et al., Defendants, Appellees.**

No. 93–1414.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1993.

Decided Nov. 16, 1993.

Robert G. Burdick with whom Darryl J. Dreyer and Louis Aucoin were on brief, for plaintiffs, appellants.

Regina Williams Tate with whom Lorna M. Hebert was on brief, for defendants, appellees City of Lowell, Lowell School Committee and George Tsandikos, Special Education Administrator.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and BARBADORO,* District Judge.

COFFIN, Senior Circuit Judge.

Plaintiffs Karl and Diane Pihl filed this lawsuit in 1987, alleging that defendants

---

* Of the District of New Hampshire, sitting by    designation.

Massachusetts Department of Education, Lowell School Committee, City of Lowell and Lowell Special Education Administrator George Tsandikos denied educational services due Karl as a disabled child. They now appeal from a district court order dismissing their complaint for failure to state a claim upon which relief could be granted, presumably because moot, since the challenged educational plan had expired four years earlier, and Karl had since passed the age of entitlement for services. We conclude, after review of the authorities, that the Individuals with Disabilities Education Act (IDEA)[1] empowers courts to grant a remedy in the form of compensatory education to disabled students who are beyond the statutory age of entitlement for special education services, and that Karl Pihl has alleged facts which, if proven, state a claim for relief. We therefore reverse the district court's decision to dismiss, and remand for determination of the merits of his claim.

## I.  *Factual Background*[2]

Plaintiff Karl Pihl is a twenty-seven-year-old man who is emotionally disturbed and retarded, and who suffers from profound hearing loss and speech deficiencies. Karl began receiving special education services at the age of four, and attended a number of different programs over the years. The local school system was obligated by state and federal law to provide these services to him. *See infra* at 187. During the 1983 school year, Karl participated in a residential/educational program for multi-handicapped deaf students at the Perkins School for the Blind, but was terminated due to aggressive behavior. He was placed at the Lighthouse School, a private day facility, on an interim basis, until an appropriate residential program could be found. In June 1985, dissatisfied with the educational services Karl was receiving at the Lighthouse School, Karl's mother Diane removed him from school and kept him at home, under the care of two twenty-four hour attendants. While the Pihls paid for twenty-four hour care, the school system held his place open at the Lighthouse School, continuing to search for an appropriate program, or ways to adapt the Lighthouse School program to meet Karl's needs.

In 1986, when Karl was nineteen, his mother requested a due process hearing before the Board of Special Education Appeals (BSEA) to review her claim that Karl was not receiving the educational services to which he was entitled by law. Following the hearing, held on July 15, 1986, Mrs. Pihl and the Lowell Public Schools signed a consent decree requiring the school district to provide interim services to Karl while an appropriate residential placement was sought.[3] The interim agreement was to end on November 30, 1986, or earlier, if Karl were placed in a residential program acceptable to his parent, or ordered by a hearing officer, or if the agreement was terminated by order of the hearing officer. The hearing officer was to retain jurisdiction, and the hearing would reconvene if Lowell had not presented a program willing to accept Karl by that date. The hearing also would reconvene at either party's request, or if Diane Pihl were to reject a proposed program.

On January 28, 1987, the hearing was reconvened on plaintiffs' motion, and the Massachusetts Department of Education (DOE) was joined as a party. Plaintiffs sought an order that an appropriate program be created for Karl, because no existing appropriate educational facility had been found for him. The BSEA issued an order the next day, January 29, requiring Lowell to create a

---

1. The IDEA was formerly known as the Education of the Handicapped Act (EHA). *See* Pub.L. 102–119, § 25(b), Oct. 7, 1991, 105 Stat. 607 (substituting "Individuals with Disabilities Education Act" for "Education of the Handicapped Act"). Except when reciting the history of the case, or when quoting decisions which cite to the EHA, the parties cite to the IDEA in their briefs, and we join them in doing so.

2. These facts are drawn from the three volume Administrative Record filed by the parties in the district court on September 9, 1987, and the pleadings filed in this case.

3. The consent decree specifically stated that Mrs. Pihl did not, by this agreement, admit that the interim services provided pursuant to the decree were sufficient or adequate to fulfill Lowell Public Schools' obligations under state and federal law.

home-based program. The hearing officer also noted an agreement by the parties that Mrs. Pihl would receive monies due her from Lowell as a result of payments made pursuant to the consent decree. The BSEA deferred decision on five issues, including: whether service delivery pursuant to the consent decree should be adjudicated inadequate and inappropriate; and whether Karl was entitled to compensatory services for two years following his 22nd birthday.

Two weeks later, the school district filed a motion for reconsideration, indicating that it had found a residential placement for Karl at the Brown School in Austin, Texas. The same day, the plaintiffs filed this lawsuit, seeking to compel the defendants to provide Karl with an appropriate education, in accordance with the BSEA's January 29 decision. The BSEA granted the motion for reconsideration, and, following a five day hearing, ruled that the program proposed by defendants was an appropriate placement for Karl, and ordered Lowell to prepare an individualized educational program (IEP) for Karl reflecting this placement.[4]

On May 11, 1987, plaintiffs filed an amended complaint alleging causes of action under the Education of the Handicapped Act (EHA), 20 U.S.C. §§ 1401–1415, and parallel provisions of Massachusetts law, Mass. Gen.L. Ch. 71B. They claimed that Karl had never been provided with an appropriate IEP; that except for a few weeks of intermittent tutorial services, he had been without an IEP, or any education whatsoever, for at least two years; and that the Brown School placement was inappropriate and in violation

of state law, because of its great distance from the Pihls' home, its restrictive (hospital-based) nature, and the fact that it was not approved by Massachusetts or Texas for education of the deaf, due to the lack of properly certified personnel. Plaintiffs sought a preliminary injunction requiring Lowell to maintain interim services until resolution of the dispute; an injunction against the Brown School placement that would require the defendants to provide an appropriate education in the least restrictive setting as close as possible to home; an injunction requiring compensatory education; an order for payment of out-of-pocket educational, legal, and expert expenses and costs; and all other forms of relief that the court deemed just.

On May 18, 1987, the district court dismissed plaintiffs' section 1983 claim, since plaintiffs' exclusive avenue for appeal and relief was provided by the IDEA. Nearly six years later,[5] on March 9, 1993, another district court judge allowed defendants' second motion to dismiss. In a margin order, the court stated that plaintiffs had failed to show "entitlement to any relief this court could properly grant." The district court did not elaborate on the reasons for its decision. It apparently adopted, however, the defendants' position that plaintiffs' complaint was moot because the challenged IEP had expired four years earlier, and because Karl was beyond the age of entitlement for special educational services under the IDEA.[6]

On this appeal, plaintiffs address only their claim for compensatory education. They contend that, if Karl demonstrates that defendants failed to provide him with appropri-

---

4. The IEP is a comprehensive written statement, developed jointly by the child's parents, the school district, and, where appropriate, the child, which outlines the child's special educational needs, and the specially designed instruction and services to be provided by the school system to meet those needs. 20 U.S.C. § 1401(a)(20); 34 C.F.R. §§ 300.340, 300.344, 300.346; 603 Code Mass.Regs. §§ 28.314.0, 28.322.0. The IEP must be reviewed, and, where appropriate, revised, at least once a year, in order to ensure that local agencies tailor the statutorily required "free appropriate education" to each child's unique needs. *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988); 20 U.S.C. §§ 1413(a)(1, 11), 1414(a)(5); 34 C.F.R. § 300.-343; Mass.Gen.L. Ch. 71B, § 3.

5. The case was initially set for trial on September 28, 1987, but was postponed due to the withdrawal of plaintiffs' counsel. Except for two pro se motions made by plaintiffs in 1987 and 1988, no further action was taken on this case until November 1991, when a magistrate judge convened a status conference.

6. The court apparently gave some significance to the earlier dismissal, noting that "defendants' earlier motion to dismiss ... was previously allowed on May 18, 1987." That decision, however, had dismissed only the section 1983 claims.

ate educational services during the challenged period, he is now entitled to compensatory services, regardless of his age. Although they acknowledge that the BSEA has not rendered final decisions on the appropriateness of services provided during some of the contested period, they argue that they should be excused from the usual exhaustion requirement. Defendants continue to argue that this case is moot, because the challenged IEP expired over five years ago, and because Karl is beyond the age of entitlement for services under the Act.

■ When evaluating a motion to dismiss under Rule 12(b)(6), we take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor. *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992). We begin with a review of the statutory backdrop.

## II. *Discussion*

### A. *Statutory Framework*

The IDEA requires states, as a condition of accepting federal financial assistance, to ensure a "free appropriate public education" to all children with disabilities. 20 U.S.C. §§ 1400(c), 1412(1). In Massachusetts, in accordance with the state's responsibility under the Act, disabled children remain eligible for special education services up to the age of twenty-two, provided they have not yet attained a high school diploma or its equivalent. Mass.Gen.Laws Ch. 71B, §§ 1, 3.

The Act imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free appropriate public education. 20 U.S.C. §§ 1401(a)(20); 1412(2, 4, 5, 7); 1415(a, b); *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 182–84, 102 S.Ct. 3034, 3038–39, 73 L.Ed.2d 690 (1982). These procedural safeguards "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311–12, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1987); *see also Burlington School Committee v. Mass. Dept. of Ed.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1984).

The IEP is the primary safeguard, *Honig*, 484 U.S. at 311, 108 S.Ct. at 597–98; *Burlington*, 471 U.S. at 368, 105 S.Ct. at 2002; 20 U.S.C. § 1401(a)(20); 34 C.F.R. § 300.346 (1992); Mass.Gen.L. ch. 71B, § 3, and parents have a right to an "impartial due process hearing" to resolve any complaints about a child's IEP. 20 U.S.C. § 1415(b)(2). In Massachusetts, this function is performed by the BSEA. Mass.Gen.L. ch. 15, § 1M (West Supp.1993). The BSEA's decision is reviewable in either state or federal court, which tribunal has broad discretion to grant appropriate relief. 20 U.S.C. § 1415(e)(2); *see Burlington*, 471 U.S. at 369, 105 S.Ct. at 2002.

We now proceed with a general discussion of the availability of compensatory education under the IDEA. We next discuss the availability of this type of relief following the statutory age of entitlement.

### B. *Availability of compensatory education under the Act*

■ In this case, the Pihls claim that there was no appropriate IEP for substantial periods of time, beginning from a time before Karl's removal from the Lighthouse School in June 1985. They contend that the Supreme Court's decision in *Burlington School Committee v. Mass. Dept. of Ed.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1984) establishes that a student who fails to receive appropriate services during any time in which he is entitled to them may be awarded compensation in the form of additional services at a later time. Plaintiffs claim that Karl lacked an appropriate IEP, and thus adequate educational services, beginning with the period before his removal from the Lighthouse School in 1985, and through his last school year of eligibility in 1987–1988. They claim that even though he is beyond the statutory age of entitlement, Karl is still entitled to future services to make up for the school district's failure to provide adequate services in the past.[7]

---

**7.** Defendants devote most of their brief to arguing that this case is moot, invoking cases suggest-

In *Burlington,* the Supreme Court held that courts' authority to grant relief under the Act "includes the power to order school authorities to reimburse parents for their expenditures on private school education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." 471 U.S. at 369, 105 S.Ct. at 2002. In the context of the comprehensive, and often time-consuming, review process afforded by the IDEA, this type of equitable relief helps to secure the child's right to a *free* appropriate public education, as well as the parents' right to meaningful participation in the development of a proper IEP, in accordance with the congressional intent to provide relief that remedies deprivations of these rights. *Id.* at 370, 105 S.Ct. at 2003.

Courts of appeal in the Second, Third, Sixth, Eighth, and Eleventh Circuits have extended the Supreme Court's rationale in *Burlington* to support the award of compensatory education as "appropriate relief" under the Act. *See Burr v. Ambach,* 863 F.2d 1071, 1078 (2d Cir.1988), *vacated and remanded sub nom. Sobol v. Burr,* 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), *reaff'd on reconsideration, Burr v. Sobol,* 888 F.2d 258 (1989); *Lester H. v. Gilhool,* 916 F.2d 865, 872–73 (3d Cir.1990); *Hall v. Knott County Bd. of Education,* 941 F.2d 402, 407 (6th Cir.1991); *Miener v. State of Missouri,* 800 F.2d 749, 753 (8th Cir.1986); *Jefferson County Bd. of Educ. v. Breen,* 853 F.2d 853, 857–58 (11th Cir.1988).[8]

In likening compensatory education to the tuition reimbursement allowed in *Burlington,* the Eighth Circuit reasoned that "imposing liability for compensatory educational services on the defendants 'merely requires [them] to belatedly pay expenses that [they] should have paid all along.' Here, as in *Burlington,* recovery is necessary to secure the child's right to a free appropriate public education." *Miener,* 800 F.2d at 753 (internal citations omitted). Sensitive to the Act's intent to provide free, appropriate education to *all* children, the *Miener* court asserted the school district should not "escape liability for [educational] services simply because [the parent] was unable to provide them in the first instance ... We are confident that Congress did not intend the child's entitlement to a *free* education to turn upon her parent's ability to 'front' its costs." *Id.* Each of the other circuits adopting this view has explained its ruling in a similar fashion.

Although the First Circuit has not ruled explicitly whether compensatory education is available under the Act, we have assumed that it is. *See Murphy v. Timberlane Regional School Dist.,* 973 F.2d 13, 16 (1st Cir.1992) (citing cases) (recognizing that "every circuit which has addressed this issue since ... [*Burlington* ] ... has found that compensatory education is available under the Act."). With the issue now squarely before us, we have no difficulty in joining those circuits that have decided that compensatory education is available to remedy past deprivations. For the reasons articulated by

---

ing that review is unavailable for an expired IEP, except in special circumstances, such as when the dispute over the development and/or rejection of the IEP is likely to be repeated in the same form in the future. None of these cases reject a claim for compensatory education that is ripe for review, and they consequently are entirely inapposite in this context. *See, e.g., Straube v. Florida Union Free School Dist.,* 801 F.Supp. 1164 (S.D.N.Y.1992) (noting the availability of compensatory education beyond a student's 21st birthday, and awarding compensatory education after graduation from high school, based on challenge to expired IEP). The issue here is not how to modify an existing inadequate IEP, but whether a student is entitled to services to compensate for a past deficient program.

**8.** The nature and extent of compensatory education services which federal courts have recog-

nized varies according to the facts and circumstances of a given case. Such an award may include extra assistance in the form of tutoring, *see Hall v. Detroit Public Schools,* 823 F.Supp. 1377 (E.D.Mich.1993), or summer school, *see Johnson v. Bismarck,* 949 F.2d 1000 (8th Cir. 1991), while students are still within the age of entitlement for regular services under the Act, or an extended period of assistance beyond the statutory age of entitlement, *see, Lester H.,* 916 F.2d at 873; *Burr,* 863 F.2d at 1078; *Jefferson County Bd. of Educ.,* 853 F.2d at 857. In awarding compensatory education past the age of entitlement, courts have directed the parties to take into account the student's educational status and needs at the time the relief takes effect. *See Straube,* 801 F.Supp. at 1181; *Puffer v. Raynolds,* 761 F.Supp. 838, 853 (D.Mass.1988).

those courts, and noted above, we are persuaded that *Burlington* anticipates the availability of compensatory education under the IDEA. We therefore reject defendants' suggestion that this case is moot simply because the time for modifying the challenged IEPs has passed. If an IEP from a past year is found to be deficient, the Act may require services at a future time to compensate for what was lost.

### C. *Availability of Compensatory Education After Passing the Age of Entitlement*

■ Defendants argue that, notwithstanding a right to compensatory education under the IDEA, Karl Pihl is ineligible and this case is moot because Karl is now beyond the age of entitlement for services under the Act. They rely on *Honig*, 484 U.S. at 318, 108 S.Ct. at 601, in which the Supreme Court held that an IDEA challenge to a policy allowing indefinite suspension of a disabled student for violent and disruptive conduct stemming from his disabilities was moot as to Doe, a 24–year–old man, since he was "no longer entitled to the protections and benefits of the [IDEA], which limits eligibility to disabled children between the ages of 3 and 21." Because the Act did not cover him, the Court held, there was no reasonable likelihood that Doe again would suffer the challenged harm. He therefore had no right to injunctive relief against such suspensions. *Id.*

Defendants maintain that, like Doe, Karl Pihl is beyond the age of entitlement and thus is ineligible for services under the IDEA. And, like Doe, they claim, Pihl does not fall within the exception to the mootness doctrine for conduct that is "capable of repetition, yet evading review," *see Honig*, 484 U.S. at 318–23, 108 S.Ct. at 601–04 (discussing "capable of repetition, yet evading review" exception to mootness), as he ceased to be eligible for educational services under the IDEA in 1988, when he turned 22. Lowell has not since been, nor ever will be again, required to negotiate an IEP for Karl.

We find *Honig* inapplicable to a claim for compensatory education. The Act requires a state to provide a "free appropriate education" to every disabled child, and empowers district courts to provide a remedy for individual handicapped children who are deprived of that right. 20 U.S.C. §§ 1400(c), 1412(1), 1415(e). The crucial difference between *Honig* and this case is the nature of the relief requested. In *Honig*, Doe was asking the court to make the school district comply with the Act in the future. But, because Doe was beyond the age of entitlement for services, he had no right to demand that the school district comply with the Act either presently or in the future. By contrast, Karl Pihl is asking only that the court compensate him for rights that he claims the school district denied him in the past. *See Lester H.*, 916 at F.2d at 872.

This past term, the Supreme Court implicitly recognized this distinction in *Zobrest v. Catalina Foothills School District*, —— U.S. ——, —— n. 3, 113 S.Ct. 2462, 2464, n. 3, 125 L.Ed.2d 1 (1993). In *Zobrest*, the Court found that a student's claim under the IDEA for reimbursement for services presented a live controversy, notwithstanding the fact that he had graduated from high school, and therefore was no longer eligible for services under the Act. Even before *Zobrest*, a number of circuits had held that a student who was deprived of services to which he was entitled under the IDEA has a right to a remedy, in the form of compensatory education, regardless of his eligibility for current or future services under the Act. *See Burr*, 863 F.2d at 1078; *Lester H.*, 916 F.2d at 873; *Jefferson County Bd. of Educ.*, 853 F.2d at 857.

Common sense commands such a conclusion. In order to give meaning to a disabled student's right to an education between the ages of three and twenty-one, compensatory education must be available beyond a student's twenty-first birthday. Otherwise, school districts simply could stop providing required services to older teenagers, relying on the Act's time-consuming review process to protect them from further obligations. Although students able to front the costs of an appropriate education later could claim reimbursement under *Burlington* and *Zobrest*, absent a compensatory education award, courts would be powerless to aid intended beneficiaries who were over twenty-one but

who had not sought out an alternative educational program. *See Lester H.*, 916 F.2d at 872; *Burr*, 863 F.2d at 1078. We cannot believe that Congress, in establishing a disabled student's right to public education, would allow a school district to suspend the educational rights of such disabled eighteen- or nineteen-year-olds without a remedy. *See id.* In addition, as the Eighth Circuit has noted, compensatory education is consistent with Congress' intent to channel available resources to activities and programs that benefit disabled students. *See Miener*, 800 F.2d at 753, *citing Smith v. Robinson*, 468 U.S. 992, 1020, 104 S.Ct. 3457, 3473, 82 L.Ed.2d 746 (1984),[9] *quoting* 121 Cong.Rec. 19501 (1975).

Thus, if Karl Pihl can prove that the school district denied him his right to an appropriate education under the IDEA during the challenged period, he could claim relief in the form of compensatory education, notwithstanding the fact that he is now twenty-seven years old.

### III. *Exhaustion of administrative remedies*

There is no question that the IEP ordered for the 1987–1988 school year is ripe for judicial review, because the BSEA issued a final decision upholding the Brown School placement. Defendants maintain, however, that plaintiffs failed to raise their claim for compensatory education for the period *before* June 1987–June 1988 at the administrative level, and that this failure bars the court from hearing that portion of the claim. *See David D. v. Dartmouth School Committee*, 775 F.2d 411, 424 (1st Cir.1985) (since the District Court's role in an IDEA case is to provide something short of a trial *de novo*, issues first must be presented to the administrative hearing officer to be preserved for judicial review).

Our review of the record supports plaintiffs' contrary contention that they in fact raised this issue in a timely manner before the administrative agency. In its January 29, 1987 order, the BSEA explicitly deferred decision on five specific matters, including "[w]hether service delivery pursuant to the Consent Decree should be adjudicated inadequate and inappropriate," and "[w]hether Karl is entitled to compensatory services for two years following his 22nd birthday." Therefore, it is not automatically barred from consideration. The BSEA, however, never made a final determination on the pre–1987 time period, and the rules regarding exhaustion of administrative remedies may constrain the district court's evaluation of the services provided during that time.

■ While parties ordinarily must exhaust administrative remedies under the IDEA before initiating court action, in certain cases, they may bypass the administrative process to seek judicial relief. *See Honig*, 484 U.S. at 326–27, 108 S.Ct. at 606; *Smith v. Robinson*, 468 U.S. 992, 1014 n. 17, 104 S.Ct. 3457, 3469–70 n. 17, 82 L.Ed.2d 746 (1984); *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089, 1094 (1st Cir.1989); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774–75 (1st Cir.1981). Exhaustion may not be required where the pursuit of administrative remedies would be futile or inadequate; waste resources, and work severe or irreparable harm on the litigant; or when the issues raised involve purely legal questions. *See id.*[10] We have also noted that exhaustion

---

9. The 1986 amendments to the IDEA superseded *Smith* by allowing pursuit of federal statutory rights and remedies outside the IDEA, *see* Handicapped Children's Protection Act of 1986, P.L. 99–372 § 3, 100 Stat. 796 (1986), but they support the congressional language quoted in *Smith*.

10. The legislative history of the IDEA supports the view that exhaustion is not a rigid requirement. During the debate on the Senate Conference Report, Senator Williams, the Act's principal author, stated that "exhaustion of the administrative procedures established under this part should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter." 121 Cong.Rec. 37416 (1975), *quoted in Ezratty*, 648 F.2d at 774. Similarly, the House Report for the 1986 amendments recited permissible exceptions to the exhaustion requirement, including where using administrative procedures would be futile; where an agency's policy or practice is contrary to law; and where it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought). H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985), *quoted in Christopher W.*, 877 F.2d at 1094.

is not normally required where the agency has prevented the litigant from pursuing her claim at the administrative level. *Ezratty,* 648 F.2d at 775.

Plaintiffs, in effect, claim to fall within this last exception, arguing that any failure to exhaust administrative remedies with respect to the issue of compensatory education prior to the Brown School placement is due to the BSEA's error or intransigence. It is not clear, however, that the agency bears sole responsibility for this failure. The record does support plaintiffs' claim that once the hearing officer had reserved the issue of Karl Pihl's entitlement to compensatory education, she never returned to it. However, in evaluating BSEA's failure to address this issue, plaintiffs' own actions should also be considered. *See, e.g.,* Plaintiffs' letter accompanying motion in opposition to reconsideration, dated February 17, 1987 (waiving any determination by the BSEA at this time regarding questions other than those relative to Karl Pihl's current appropriate educational placement); *see also supra* at 186, n. 5. Moreover, it is open to question whether plaintiffs could have sought an order from the court requiring the BSEA to convene in order to resolve the issue of plaintiffs' entitlement to compensatory education for the earlier period. *See Ezratty,* 648 F.2d at 777 n. 7.

We believe the exhaustion issue is more appropriately resolved by the district court, which already will be considering the 1987–1988 IEP. We note, however, that our preliminary review suggests that the factual record regarding Karl Pihl's educational placement during the two years prior to the Brown School IEP is substantially developed, and the court may not need the "peculiar expertise of an administrative hearing officer," *see Lester H.,* 916 F.2d at 425, to aid in its determination of this claim. Moreover, the Act empowers courts sitting in review of administrative complaints to supplement the hearing record with additional evidence at trial. *See* 20 U.S.C. § 1415(e)(2); *Roland M. v. Concord School Committee,* 910 F.2d 983 (1st Cir.1990) (describing the thorough, yet deferential, district court review of administrative determinations under the Act); *Town of Burlington v. Dept. of Educ., Comm. of*

*Mass.,* 736 F.2d 773, 790 (1st Cir.) (same), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1984); *see also Rowley,* 458 U.S. at 205, 102 S.Ct. at 3050. The court also may conclude that any further delay in this already protracted litigation would serve no purpose.

*Reversed and remanded for further proceedings consistent with this opinion.*