Carroll v. Venturi Holding Co.        CV-97-324-SD   02/09/98
                UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Michael P. Carroll, et al


        v.                              Civil No. 97-324-SD


Venturi Holding Company, Inc., et al


                        O R D E R


        Plaintiffs Michael P., Sherrie, Michael A., and Bryan
Carroll (the Carrolls) initiated this civil action against
defendants Venturi Holding Company, d/b/a/ The Williams Group
(TWG), and Michael Williams for damages caused by defendants'
termination of the employment of Michael P. Carroll (Carroll).
Plaintiffs allege that TWG and Williams discriminated against
Carroll because of disability in violation of the Americans with
Disabilities Act, 42 U.S.C. § 12101, et seq. (ADA), and the New
Hampshire Law Against Discrimination, Revised Statutes Annotated
(RSA) 354-A:2 (Counts I and II).  Plaintiffs also allege breach
of contract (Count III), intentional infliction of emotional
distress (Count IV), loss of consortium (Count V), and loss of
parental support (Count VI).  Currently before the court is
defendants' motion to dismiss all counts under Rule 12(b)(6),
Fed. R. Civ. P.

## Background

TWG develops and manages commercial real estate. On April 10, 1995, TWG engaged Carroll as an independent consultant to work at its Newfields, New Hampshire, location. TWG subsequently hired Carroll as a regular employee, naming him Controller on April 30, 1995. On May 17, 1995, TWG promoted Carroll to Chief Financial Officer. In August 1995, TWG gave Carroll the additional title of Chief Operating Officer and indicated that it was pleased with Carroll's work and would adjust his $75,000 salary to reflect that he was performing the functions of both CFO and COO. TWG increased Carroll's salary on October 17, but the adjustment was less than half of the increase Carroll had recommended.

In October of 1995 Carroll was diagnosed with a potentially fatal form of cancer that interferes with the functioning of the pancreas. Carroll informed TWG of his diagnosis. On October 28, 1995, Carroll entered the hospital to undergo surgery for a pancreatic tumor and was out of work for three weeks following his surgery. Carroll returned to work on November 20, and began a course of chemotherapy and radiation treatments on November 27.

In January of 1996 the relationship between Carroll and Williams became strained. At a meeting on February 5, 1996, Williams told Carroll that performing the duties of CFO and COO was too much work, and he should go back to the role of CFO only. TWG decreased Carroll's salary to $60,000.

2

On April 1, 1996, TWG terminated Carroll's employment and informed Carroll in writing that he would be paid until the end of June, that he could retain the company vehicle until that time, and that TWG would continue to provide full health insurance coverage until he had completed his follow-up care after surgery, which was scheduled for June 4, 1996. Despite these assurances, TWG contacted Carroll on May 31 in an attempt to repossess the car. After Carroll refused to return the vehicle until June 28, TWG made several attempts to repossess the vehicle by contacting the police and canceling the insurance on the car.

On September 25, 1996, Carroll filed a charge of discrimination with the New Hampshire Commission for Human Rights and the Equal Employment Opportunity Commission (EEOC). On October 22, the New Hampshire Commission for Human Rights referred his complaint to the EEOC. Carroll received notification of the EEOC's final determination of his charge on March 31, 1997. Carroll filed suit in this court on June 30, 1997.

Discussion

## 1. Standard for Dismissal Under Rule 12(b)(6)

When a court is presented with a motion to dismiss filed under Rule 12(b)(6), Fed. R. Civ. P., "its task is necessarily a limited one. The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

To resolve defendants' Rule 12(b)(6) motions, the court must "take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993) (citing Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992)). The court may properly dismiss a claim under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

2. ADA Claim

Defendants assert that Carroll's ADA claim is untimely. According to 42 U.S.C. § 2000e-5(f)(1), any suit brought pursuant to that chapter must be filed within ninety days after receipt of the EEOC's final disposition of the claim. Defendants argue that because Carroll's right-to-sue letter was dated March 26, the court must presume that Carroll received it three days later. Thus, if Carroll received the letter on March 29, the time for filing suit would have expired before he initiated this case on June 30. However, as defendants acknowledge in their memorandum,

4

"there is a presumption, <u>absent</u> <u>evidence</u> <u>presented</u> <u>by</u> <u>the</u> <u>plaintiff</u> <u>to</u> <u>the</u> <u>contrary</u>, that such receipt occurs three days after posting of the right-to-sue letter." Defendants' Memorandum of Law in Support of Motion to Dismiss the Plaintiffs' Complaint at 5 (emphasis added). In this case, Carroll has presented evidence that the right-to-sue letter was received on March 31, 1996. Specifically, Carroll has produced the affidavit of his attorney's receptionist, who opened the letter and stamped it received, as well as a copy of the envelope bearing the date stamp. Thus, in the presence of evidence of the actual date of receipt, the court has no need to apply a presumption.

### 3. New Hampshire Law Against Discrimination

Defendants ask the court to dismiss Carroll's claim under RSA 354-A:21, because the court lacks jurisdiction to decide the claim. As this court has held previously, RSA 354-A:21 does not create a cause of action in a federal court. See <u>Tsetseranos v. Prototype, Inc.</u>, 893 F. Supp. 109, 120 (D.N.H. 1995). "[U]nder RSA 354-A, . . . individuals are limited to seeking relief through the administrative process created by the statute and to obtaining judicial review of the results thereof in state court." <u>Id.</u>

## 4. Contract Claim

Defendants argue that the court should dismiss Carroll's breach of contract claim because "no contract of any kind existed as to Mr. Carroll's employment." Defendants' Memorandum at 8. However, defendants concede that "the plaintiffs have alleged that an employment contract existed," and "TWG disputes this allegation." Id. n.7. Thus, by defendants' own admission, Carroll's complaint does state a claim upon which relief may be granted. Defendants simply dispute the claim.

In their memorandum, however, plaintiffs assert that even if Carroll did not have an employment contract, his termination violated public policy, and therefore was actionable under New Hampshire law. The court, however, finds that the complaint does not state a claim based upon wrongful discharge. "To have a valid claim for wrongful termination, the plaintiff must show: 'one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would encourage or because he refused to perform acts which public policy would condemn.'" Wenners v. Great State Beverages, 140 N.H. 100, 103, 663 A.2d 623, 625 (1995) (quoting Short v. School Admin. Unit 16, 136 N.H. 76, 84, 612 A.2d 364, 370 (1992)), cert. denied, 116 S. Ct. 926 (1996). The United States Court of Appeals for the First Circuit has stated that under New Hampshire law, "the existence of [a

6

statutory] remedy . . . precludes . . . a common law claim for wrongful discharge." Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996). Thus, to state a claim for wrongful discharge, the plaintiff must allege that his employer terminated him because he performed an act public policy would encourage, and for which there is no statutory remedy. The complaint in this case does not allege that Carroll was terminated for performing an act public policy would encourage. Furthermore, the ADA provides a remedy for the conduct Carroll alleges. Thus, although Count III does state a claim for breach of contract, it does not state a claim for wrongful discharge.

5. The Workers' Compensation Exclusivity Provision

Defendants correctly argue that "the plaintiffs are precluded by N.H. RSA 281-A:8 from bringing a common-law action for personal injury against TWG . . . ." Defendants' Memorandum at 10. The workers' compensation law prevents employees from bringing common-law claims against their employers for personal injuries arising out of the employment relationship, and precludes employees' spouses from bringing loss of consortium claims based on such injuries. See Young v. Prevue Products, Inc., 130 N.H. 84, 88, 534 A.2d 714, 717 (1987); O'Keefe v. Associated Grocers of New England Inc, 120 N.H. 834, 835-36, 424 A.2d 199, 201 (1980). Emotional distress is considered a "personal injury," for which workers' compensation is the

7

exclusive remedy.  See Censullo v. Brenka Video, 989 F.2d 40, 43
(1st Cir. 1993) (interpreting New Hampshire Law).  Furthermore,
the bar applies to suits against employers, regardless of whether
the claim is  based on negligence or an intentional tort.  See
Miller v. CBC Companies, Inc., 908 F. Supp. 1054, 1068 (D.N.H.
1995).

The Carrolls, however, assert that their intentional
infliction of emotional distress claim is against Williams in his
individual capacity, rather than against TWG.  The court finds
that, drawing every inference in the Carrolls' favor, their
complaint does state a claim against Williams.  The Workers
Compensation exclusivity provision explicitly provides that
employees are presumed to have waived their right to sue "except
for intentional torts, against any . . . employee acting on
behalf of the employer. . . ."  RSA 281:8, I.  Thus, if Williams
was acting as an employee of TWG, he may still be sued under the
common law for his intentional torts.  Although Williams may
dispute the assertion that he was acting as a co-employee rather
than as Carroll's employer, this issue cannot be decided at this
juncture in the litigation.

Furthermore, even if Williams was Carroll's employer, the
Carrolls' claim arguably may fall within an exception that allows
employees to maintain a common-law action against their employer
when the employer personally causes an intentional injury.
Numerous jurisdictions have held that an injury intentionally

caused "by the employer upon the employee, when the employer acts in person as distinguished from constructively through an agent, will ground a common-law action for damages." 6 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 68.11 (1997). There are two strains of reasoning supporting this rule. First, courts reason that because state workers' compensation laws only apply to accidental injuries, an injury intentionally caused by the employer is outside the scope of the system. Although an intentional tort committed by a co-employee is accidental from the employer's perspective, when the employer intentionally causes the injury it can no longer be considered accidental. See id. Second, as a policy matter, some courts are reluctant to allow employers to injure employees intentionally and then evoke the exclusivity bar of the Workers' Compensation Act. See id. New Hampshire, however, has not explicitly recognized this exception to the workers' compensation exclusivity provision, and this court cannot decide whether this exception is recognized under New Hampshire law until properly presented with the issue.

6. Loss of Parental Support

Defendants argue that New Hampshire law does not recognize a claim for loss of parental support. According to the RESTATEMENT (SECOND) OF TORTS § 707A (1976), "One who by reason of his tortious conduct is liable to a parent for illness or other bodily harm is not liable to a minor child for resulting loss of parental

9

support and care." In the absence of compelling evidence that New Hampshire would depart from this established rule, this court will not recognize such a claim.

## Conclusion

For the abovementioned reasons, Defendants' Motion to Dismiss the Plaintiffs' Complaint (document 5) is denied in part and granted in part. The defendants' motion is denied as to Counts I, III, IV, and V.[1] Counts II and VI are hereby dismissed.[2]

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

February 9, 1998

cc:   Jennifer A. Lemire, Esq.
      Alexander J. Walker, Esq.

_____

[1]To the extent that counts IV and V state claims against TWG they are dismissed against TWG.

[2]Thus Bryan and Michael A. Carroll are not longer parties to this suit, as their only claim has been dismissed.

10