[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before the Court are various motions that arise from a five count complaint brought by the Plaintiff, John Doe, a minor, by and through his Parents and Natural Guardians, alleging violations of rights under the Individuals with Disabilities Education Act ("IDEA"). The Defendant East Greenwich School Department ("School Department") seeks dismissal of the Plaintiff's complaint for failure to exhaust administrative remedies. The Defendant Rhode Island Department of Elementary and Secondary Education ("RIDOE"), the Commissioner, and the Board of Regents for Elementary and Secondary Education (hereinafter the "State Defendants") request the Court to dismiss the Plaintiff's complaint for insufficient service of process. The State Defendants also urge the Court to vacate the entry of default entered in the U.S. District Court. The Plaintiff has responded by filing a motion to strike the State Defendants' motions to dismiss.
 FACTS AND TRAVEL
For purposes of the instant motions, the Court accepts the facts as alleged by the Plaintiff. The Plaintiff is a child, age 7, who has been diagnosed with Asperger's Syndrome. On or about June 17, 2003, the Plaintiff presented a proposed Individualized Education Plan ("IEP")[1]
to the School Department. The School Department informed the Plaintiff that it would respond within two weeks; however, the School Department failed to provide any response. As a result, on or about July 9, 2003, the Plaintiff filed a request for an impartial due process hearing with RIDOE.
On or about July 28, 2003, RIDOE assigned Rita Michaelson as hearing officer, and a pre-hearing conference was scheduled for August 8, 2003. At the same time, the Plaintiff presented RIDOE with a proposed Consent Judgment, which contained an IEP consistent with recommendations made by expert consultants who had observed the Plaintiff. At a pre-hearing conference held on August 8, 2003, the School Department informed the Plaintiff that it would not respond to the Plaintiff's proposed Consent Judgment. The hearing officer subsequently scheduled hearing dates for the first week of September 2003.
On September 4, 2003, the parties agreed to an order which canceled the September hearing dates, rescheduled the first hearing date for October 3, 2003, and continued the due date for a decision from the hearing officer until October 23, 2003. Pursuant to the order, the School Department was to continue to provide services to the Plaintiff for the first month of the 2003-2004 school year. The order further provided that an IEP meeting would be scheduled for September 29, 2003, and that the School Department's expert consultants Kelley Harrison, Ph.D and Amy Laurent (hereinafter "the consultants") would attend the IEP meeting.
Approximately four days before the IEP meeting, the attorney for the School Department requested that the meeting be postponed until October 2, 2003 to allow the School Department to review a report from one of the expert consultants. The School Department indicated to the Plaintiff that the consultants would be available to attend a meeting on October 2, 2003. However, the Plaintiff later learned that both consultants were not available for that date and that the School Department's counsel had made no attempt to ascertain the experts' availability.
On October 3, 2003, the hearing officer continued the due process hearing until November, 3, 2003, and scheduled an IEP meeting for October 8, 2003 to allow the School Department to complete and submit an IEP prior to the due process hearing. On October 28, 2003, the School Department requested a continuance of the due process hearing. The Plaintiff objected to the continuance, and the hearing officer denied the School Department's continuance request. On October 31, 2003, the Plaintiff's attorney advised the School Department that further participation in the administrative process would be futile given the failure to complete and implement an IEP that far into the school year.
On November 3, 2003, the parties agreed to extend the due date for the hearing officer's decision to November 6, 2003. On the same date, the Plaintiff presented to the hearing officer a proposed Consent Judgment, which contained the Plaintiff's suggested IEP. The hearing officer declined to implement the Plaintiff's IEP or to enter the Consent Judgment.
At an IEP meeting held on or about November 5, 2003, the School Department presented an IEP to the Plaintiff, which the Plaintiff found to be unacceptable. Hearings were thereafter scheduled by the hearing officer for January 20-22, 2004. The Plaintiff informed the School Department that one of its expert witnesses, Diane Twatchman-Cullen, Ph.D ("Dr. Cullen"), would be attending the Plaintiff's school to observe the Plaintiff in preparation for her testimony at the due process hearing. When Dr. Cullen arrived at the school to observe the Plaintiff, she was prohibited from doing so by the school principal. The Plaintiff subsequently requested that the hearing officer order the School Department to allow Dr. Cullen to observe the Plaintiff at school without any interference from school administrators.
On January 13, 2004, the attorney for the School Department requested that the due process hearings be continued to February 9, 2004. On January 23, 2004, the hearing officer, without hearing or the consent of the Plaintiff, continued the hearing to February 24, 2004. The hearing officer indicated that at the February 24, 2004 meeting, "date certain" hearing dates would be scheduled and that she would address the Plaintiff's request for an order concerning Dr. Cullen's observation of the Plaintiff at school. On January 27, 2004, the Plaintiff objected to the continuance and to the hearing officer's refusal to hear and decide the Plaintiff's requests in a timely manner.
On February 9, 2004, the Plaintiff filed the complaint that is the subject of the motions presently before the Court. Essentially, the Plaintiff's complaint alleges that the School Department violated state and federal law by failing to have an appropriate IEP in effect for the Plaintiff as of the commencement of the current school year and also alleges that the School Department intentionally and purposefully obstructed the hearing process designed to address these issues.
Neither the Plaintiffs nor their counsel attended the due process hearing scheduled for February 24, 2004. It is undisputed that the hearing officer granted the School Department's motion to dismiss by reason of the failure of Plaintiffs or their counsel to appear at the hearing.
This case was initially removed to the federal court where a default was entered against the State Defendants for failure to appear or answer. The case was remanded to the Superior Court, apparently on the basis of improper removal. The default entered against the State Defendants was not removed prior to remand.
 State Defendants' Rule 55 Motion for Relief from Entry of Default
The State Defendants urge this Court to vacate the default entered against them in United States District Court in order to allow their participation in this Court's consideration of this case on the merits. The State Defendants assert that there is good cause to vacate the default. In response, Plaintiff contends that the State Defendants have not established good cause sufficient to vacate the default.
Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." After default is entered, judgment by default may be entered pursuant to Rule 55(b). "The court is empowered by the terms of Super. R. Civ. P. 55(c) to `set aside' a default for good cause shown. . . ." Id. (citing Medeiros,
408 A.2d at 599). The appropriate standard for the Superior Court to apply on a motion to vacate default before judgment on the default has been entered is the "good cause" standard under Rule 55(c). Reyes v.Providence Place Group, L.L.C., 853 A.2d 1242, 1247 (R.I., 2004). Under Rule 55(c), "the only showing required for removing [a] default [is] `good cause' and not the `mistake, inadvertence, surprise, or excusable neglect' showing which would [be] demanded under [Rule] 60(b), had the default been followed by the subsequent entry of a final judgment." Id. (quoting Berberian v. Petit, 118 R.I. 448, 452, 374 A.2d 791, 793
(1977)). Moreover, "where there are no intervening equities, any doubt (about the existence of good cause,) should as a general proposition, be resolved in favor of the movant" so that the issue can be decided on the merits. Berberian, 374 A.2d at 793 (quoting 6 James W. Moore et al.,Federal Practice ¶ 55.10[1], at 55-235-36 (2d ed. 1976)). A Rule 55(c) motion also may be granted whenever the court finds that "the default was not the result of gross neglect, that the nondefaulting party will not be substantially prejudiced by the reopening, and the party in default has a meritorious defense." Security Pacific Credit (Hong Kong) Ltd. v. LauKing Jan, 517 A.2d 1035, 1036 (R.I. 1986) (quoting 10 Wright, Miller 
Kane, Federal Practice and Procedure: Civil 2d § 2696 at 518-19 (1983)).
The State Defendants assert that a summons and complaint was received from the Plaintiff on February 16, 2004. (Aff. of Jennifer Wood, ¶ 5.) On March 1, 2004, a petition for removal to the U.S. District Court was filed. (Id. at ¶ 13). Counsel for the State Defendants mistakenly believed that the time within which to file a responsive pleading in Federal Court was ten days after the date of Notice of Removal to Federal Court which led to a perceived response date of March 15, 2004. (Id. at ¶ 15.) Thus, on March 10, 2004, the State Defendants filed their initial responsive pleading, a Motion to Dismiss for Failure to Exhaust Administrative Remedies, believing it to be timely, adequate, and responsive. (Id. at ¶ 16.) After the State's Defendants' responsive pleading had been on file for some twelve days, on March 22, 2004, Plaintiff's counsel filed an application for entry of default based on the theory that the March 10, 2004 motion was untimely. (Id. at ¶ 17.) The federal court clerk thereafter entered a default against RIDOE. (Id.
at ¶ 18.) The State Defendants then filed a Motion to Vacate Entry of Default on March 30, 2004. However, the federal court remanded the case before the State Defendants' motion was heard.
The State Defendants have now moved to dismiss the complaint for lack of proper service of process on the defendants.[2] In the alternative, the State Defendants move to vacate the entry of default. The affidavit explains that the late filing was the result of confusion caused in part by the attempted removal to federal court, as well as the failure to serve the Attorney General.
Under these circumstances, the State Defendants have demonstrated "good cause" under Rule 55. There are no "intervening equities" that would prejudice the Plaintiff if this Court were to allow the State Defendants to assert their defenses. In fact, those defenses were asserted by way of a responsive pleading filed on March 10, 2004 even before Plaintiff sought entry of default. Plaintiff has had ample notice of the defenses that the State Defendants believe are dispositive of this action. RIDOE's filing of its responsive pleading only two days late cannot be said to have prejudiced the Plaintiff in any way. Accordingly, this Court finds that the "good cause" standard has been met and grants the State Defendants' motion to vacate entry of default. In light of this disposition, it is unnecessary for this Court to determine if service of process was inadequate.
 School District's Motion to Dismiss
The School District seeks dismissal of the Plaintiff's complaint on the grounds that the Plaintiff has failed to exhaust its administrative remedies. The State Defendants filed a similar motion while this case was pending in the United States District Court. The Court considers both motions properly before the Court at this time.[3]
In determining whether to grant a Rule 12(b)(6) motion to dismiss, this Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs." Giulianov. Pastina, Jr., 793 A.2d 1035, 1036-37 (R.I. 2002) (quoting Martin v.Howard, 784 A.2d 291, 297-98 (R.I. 2001)). This Court should not grant the motion "unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim." Id. at 1037 (quoting Bragg v. Warwick ShoppersWorld, Inc., 227 A.2d 582, 584 (R.I. 1967)).
IDEA is a comprehensive education statute which seeks to ensure that children with disabilities receive "a free appropriate public education . . . designed to meet their unique needs." Rose v. Yeaw, 214 F.3d 206, 209
(1st Cir., 2000); 20 U.S.C. § 1400(d)(1)(A). IDEA requires state or local agencies receiving federal funds under subchapter II of IDEA to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." Id. § 1415(a); see also Honig v. Doe, 484 U.S. 305, 310-12,98 L. Ed. 2d 686, 108 S. Ct. 592 (1988). The IDEA contains a number of procedural safeguards designed to assure that parents will have meaningful input into decisions that affect the education of special needs children. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 58 (1st Cir., 2002). These include the right of parents to examine all records related to their child, to participate in meetings regarding the identification, evaluation, and educational placement of their child, to obtain an independent educational evaluation of their child, and to receive prior written notice whenever an educational agency proposes (or refuses) to change their child's placement or program. Id. § 1415(b).
Parents or guardians who believe that the state or local agencies are not performing properly may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. § 1415(b)(6). A parent who files a complaint has the right to an "impartial due process hearing" conducted by either the state or local educational agency. Id. § 1415(f)(1).
A party who is dissatisfied with the outcome of an IDEA due process hearing may bring suit in state or federal court. Frazier v. FairhavenSch. Comm., 276 F.3d 52, 59 (1st Cir., 2002); 20 U.S.C. § 1415(i)(2). However, prior to filing suit, an aggrieved party must satisfy the IDEA's exhaustion provision. Id. This provision states that:
 Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [subchapter II of the IDEA], the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter. Id. § 1415(l).
Subsection 1415(f) provides for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency.[4] Subsection 1415(g) provides that any party aggrieved by the findings and decision rendered in the impartial due process hearing may appeal such findings and decision to the State educational agency.
The rationale of the IDEA exhaustion requirement suggests that the Plaintiff should be required to exhaust the administrative process. The U.S. First Circuit Court of Appeals has noted that:
 [E]xhaustion of administrative remedies is generally required. This requirement is more than a matter of form. Insisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 60 (1st Cir., 2002) (citing P. Gioioso Sons, Inc. v. OSHRC, 115 F.3d 100, 104
(1st Cir. 1997)). Congress constructed the IDEA on the premise that plaintiffs would be "required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." Id. (quoting N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378
(11th Cir. 1996)) (per curium). Exhaustion "enables the [educational] agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy." Id. (quoting Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989)) (discussing predecessor statute).
The exhaustion requirement of the IDEA is particularly beneficial because "the problems attendant to the evaluation and education of those with special needs are highly ramified and demand the best available expertise." Id. at 60-61. "The IDEA's administrative machinery places those with specialized knowledge — education professionals — at the center of the decision making process, entrusting to them the initial evaluation of whether a disabled student is receiving a free, appropriate public education." Id. The IDEA administrative procedures also provide educational agencies with an opportunity to correct shortcomings in a disabled student's IEP. Id.
It has been held that "while parties must ordinarily exhaust administrative remedies under the IDEA before initiating court action, in certain cases, they may bypass the administrative process to seek judicial relief." Pihl v. Massachusetts Dept. of Edu., 9 F.3d 184, 190
(1st Cir. 1993). It has also been held that "a plaintiff does not have to exhaust administrative remedies if she can show that the agency's adoption of an unlawful general policy would make resort to the agency futile, or that the administrative remedies afforded by the process are inadequate given the relief sought." Rose v. Yeaw, 214 F.3d 206 (1st Cir. 2000). Exhaustion is also not required where the agency has prevented the litigant from pursuing the administrative process. Id.
(citing Pihl, 9 F.3d at 190-91). The burden of demonstrating an exception from the exhaustion requirement falls on the party seeking to avoid the requirement. Id. at 211.
The delays that parties must often endure while navigating the administrative process no doubt result in frustration, especially when one is attempting to secure an appropriate education for a child with a recognized learning difference. However, the Court must remain cognizant of those tasks for which it is well-suited and those for which it is not. The highly specialized task of conducting an initial evaluation of an education plan for a special-needs child is best left in the capable hands of experienced educational professionals. As the First Circuit has noted, "courts are ill-equipped to second-guess reasonable choices that school districts have made among appropriate instructional methods."L.T. v. Warwick Sch. Comm., 361 F.3d 80, 83 (1st Cir., 2004). In the present case, if the Court were to deny the defendants' motions, the Court would be required to inject itself into the consideration of appropriate educational alternatives without a factual record having been developed during the administrative process.
Moreover, requiring that the Plaintiff return to the administrative process at this time will not cause the Plaintiff irreparable harm. Accepting as true, for purposes of this motion, the parents' claim that this child has been irreparably harmed by the delay in establishing an appropriate IEP for the Plaintiff for the school year 2003-2004, any such harm has now been mitigated by the parents' decision to remove the child from the East Greenwich School System.[5] Sending this case back to the administrative process for appropriate evaluation and findings will not, under the present circumstances, further delay or cause harm to the child's educational program. In fact, Plaintiff's decision to file this action instead of attending the meeting scheduled for February 24, 2004 may have served to extend rather than shorten the timeframe for resolving the matter.
The avoidance of delay has not always been found to warrant a party's bypassing the IDEA administrative process. In Frazier, the First Circuit Court of Appeals found that a plaintiff's graduation from high school did not mean that she could avoid the IDEA exhaustion requirement. The Court noted that even after graduation, compensatory education in the form of tutoring or summer school is available remedies. Frazier, 276 F.3d at 63
(citing Pihl v. Mass. Dep't of Educ., 9 F.3d 184, 188-89 n. 8 (1st Cir. 1993)). Furthermore, permitting a plaintiff to proceed with an IDEA-based claim for money damages under another federal statute without first exhausting administrative remedies might simply encourage plaintiffs to wait to dispute the adequacy of their educational programs until after graduation precisely in the hope of recovering money damages. Id. This would mean that plaintiffs would not actually address educational issues when they occur — a situation directly at odds with the IDEA's primary goal of ensuring the education of children with disabilities. Id. Thus, the fact that the questions concerning the appropriate IEP plan for the Plaintiff might not be resolved prior to the end of the school year does not exempt a Plaintiff from first exhausting the IDEA administrative process.[6]
Plaintiff has argued that Rule 12(b)(6) is designed to challenge the sufficiency of a complaint, and accordingly the Court must find, for purposes of this motion, that resort to the administrative process would be futile. It is Plaintiff's position that the facts alleged in the complaint establish futility, and that if the Court accepts the alleged facts as true, the Defendants' motion must be denied. Although the Plaintiff is correct as to the standard this Court must employ in its analysis of a Rule 12(b)(6) motion, the Court need not credit conclusory allegations, bald assertions or unsupportable conclusions. See DartmouthReview v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). Thus, this Court need not accept as true the conclusions set forth in the complaint that the Town's refusal to accept the parents' IEP, and the delay incident to the administrative process, are continuing to cause Plaintiff "irreparable harm." This is particularly true in light of the child's current placement.
If in fact the School Department's failure to accept the parents' IEP proposal, or the delay by the State Defendants in holding hearings designed to address the adequacy of the IEP, were irreparably harmful to the Plaintiff, resort to this Court's equitable authority may have been available. See Rose v. Yeaw, 214 F.3d at 211. Instead, the parents chose to withdraw the child from the school district and abandon the administrative process. While the parents' decision may turn out to be the most appropriate decision in light of their child's educational needs, it does not afford a reason for this Court to weigh in on the educational issues involved, without having the benefit of the full administrative hearing and a record created therein. If it was clear to the Court that further delay incident to the administrative process was presently causing irreparable harm to the Plaintiff, the Court would consider an appropriate interim remedy. However, the present placement of the child obviates the need for such intervention at this time.
 CONCLUSION
For the foregoing reasons, the Defendants' motions to dismiss for failure to exhaust administrative remedies are granted. Counsel shall submit an order consistent with this Decision.
[1] An Individualized Education Plan is a written plan developed jointly by the local educational agency, the school teaching staff, the child's parents, and an expert qualified to interpret test results. See20 U.S.C. § 1414(d)(1)-(4). The Plan records the child's present level of performance, sets annual educational objectives, and details the special services necessary to meet these objectives. See id. § 1414(d)(1)(A). The Plan must be reviewed and revised annually. See id. § 1414(d)(4)(A).Weber v. Cranston Sch. Comm., 212 F.3d 41, 45 (1st Cir. 2000).
[2] The theory of the motion as to inadequate service of process is that RIDOE, as an agency of the State, had to be served by service on the Attorney General as provided in Rule 4(e)(4). At oral argument, counsel also argued that the Board of Regents was not properly served in accordance with Rule 4(c)(5).
[3] The Plaintiff has filed a motion to strike the motions to dismiss filed by the State Defendants, including the motion to dismiss filed on March 10, 2004 in the federal court. The basis for the motion to strike was that the State Defendants were in default and should not be allowed to press such motions. Motions pending in the federal court at the time of removal remain pending before the state court subsequent to remand. Upon remand, the State Court may properly determine the disposition of motions filed when the suit was under federal jurisdiction. CitizensNat'l. Bank of Grant City v. First Nat'l. Bank in Marion, 331 N.E.2d 471,477 (Ind.Ct.App. 1975) (citing Ayres v. Wiswall, 112 U.S. 187, 190-191
(1884)). By reason of this Court's determination that the default entered in federal court should be removed, all of the State Defendants motions to dismiss are properly before this Court for determination.
[4] Rhode Island law provides that the State Department of Education is "empowered and directed to hear all complaints relating to violations of this chapter in the area of elementary and secondary education . . . in accordance with the process set forth in chapter 39 of title 16." Weberv. Cranston Sch. Comm., 212 F.3d 41, 47 (1st Cir., 2000); R.I. Gen. Laws § 42-87-5(c). Chapter 39 of title 16 specifies that the Commissioner of Elementary and Secondary education will decide disputes arising under any law relating to schools or education with no cost to the parties involved. See id. § 16-39-1. Decisions of the Commissioner may be appealed to the Board of Regents for Elementary and Secondary education (the same body that promulgates the regulations effectuating the federal complaint resolution procedure ("CRP")). See id. § 16-39-3. Decisions of the commissioner and the board become final if judicial or administrative review is not sought within thirty days. See id. § 16-39-3.1. Final decisions are not subject to further judicial or administrative review.See id.
[5] At the hearing on this motion, counsel for the Plaintiff indicated that the child is no longer enrolled as a student in the School District. While the Plaintiff did not precisely indicate the relief being sought, this Court assumes that the Plaintiff is seeking monetary damages in the form of compensation for the costs of providing the Plaintiff an appropriate education outside of the School District.
[6] The delays alleged by the Plaintiff also do not constitute a charge of an unlawful general policy or practice by the agency. See Rafferty v.Cranston Pub. Sch. Comm., 315 F.3d. 21, 25 (1st Cir. 2002). The harm alleged by the Plaintiff stems from the alleged prolongation of the administrative process by the State Defendants. The Plaintiff's complaint does not allege that the School District ignored the Plaintiff's requests for a hearing, or that the School District sought to prevent the administrative remedies from ever taking place. In fact, the Plaintiff's own complaint evidences consent to delaying the hearing process on at least two occasions. The Plaintiff also alleges no facts suggesting bias on the part of the hearing officer that would render exhaustion of the IDEA process futile. Furthermore, an emergency situation does not exist such that exhaustion is unnecessary. See Rose, 214 F.3d at 210-211.