**Veronica C. AVERY**

v.

**RHODE ISLAND HOSPITAL and Gerald Marsocci et al.**

**83–106–Appeal.**

Supreme Court of Rhode Island.

July 5, 1985.

E. Howland Bowen, Providence, for plaintiff.

Edward L. Gnys, Jr./Thomas Chester (Gunning LaFazia & Gnys, Inc.), Providence, for Rhode Island Hosp.

Joseph A. Kelly/Ruth DiMeglio (Carroll Kelly & Murphy), Providence, for Gerald Marsocci, M.D.

## OPINION

MURRAY, Justice.

This is the plaintiff's appeal from the Superior Court judgment entered on December 3, 1982 dismissing the plaintiff's complaint. The defendants' motion to affirm the trial justice's ruling regarding two amended counts was denied by us on December 15, 1983, and the defendants now file full briefs on their behalf.

On November 24, 1978, plaintiff, who is the wife of the decedent, Marshall F. Avery, brought this action against Rhode Island Hospital, Dr. Gerald Marsocci (a practicing physician at Rhode Island Hospital), and several unknown defendants seeking $2 million in compensatory and punitive damages.[1] The original complaint alleged wrongful death, medical malpractice, and breach of a duty to hold the decedent's body for a reasonable time, amongst other theories of liability.[2] The matter was reached for trial on December 2, 1982. After plaintiff's opening statement, defendant Dr. Gerald Marsocci moved for a directed verdict. The court reserved decision on that motion. On December 3, 1982, on plaintiff's voluntary motion, counts 1 through 8 and 11 through 17 were dropped. The plaintiff was granted leave to amend counts 9 and 10. Subsequently, defendants' motion to dismiss was granted. This appeal ensued.

The remaining two counts, 9 and 10, essentially contain the same allegations regarding Rhode Island Hospital and Dr. Marsocci respectively. The complaint alleges that the husband died under these defendants' medical management and care; that defendants owed her a duty, as a widow, to hold her husband's body subject to her disposition plans; that despite such a duty, and with knowledge of a practice of the State Medical Examiner of removing certain body parts from cadavers referred to his office for examination, defendant Rhode Island Hospital transferred the body

---

1. The plaintiff reduced this claim to nominal damages for $1 following the testimony of the first witness at trial.

2. The decedent had been crushed beneath a 1,000-to-2,000 pound sheet of structural steel on November 26, 1975 during his employment as a pile-driver crew foreman. He had been placed in a "G-Suit," a device that holds a severely traumatized body together. Eight counts of the original complaint involved skin irritation to decedent's body; a common side effect of this treatment. Mr. Avery died on December 11, 1975.

to the medical examiner; that such defendants were not required by law to do so under such circumstances and had no consent from plaintiff to do so.

The plaintiff sought to prove the above allegations as well to show that the applicable statutory provision entitled "Office of State Medical Examiners," G.L.1956 (1979 Reenactment) chapter 4 of title 23, was unconstitutional and that the medical examiner had removed organs from the decedent's body. The trial justice ruled not only that the applicable statutory provision was not unconstitutional, but that it actually imposed a duty on defendants to notify the medical examiner of the death and that the medical examiner had an obligation to take charge of the body. Thus, the trial justice dismissed the case in compliance with Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

The sole issue presented here on appeal is whether the trial justice erred in dismissing the complaint.

■ The plaintiff's argument is essentially that defendants had a common-law duty "to hold * * * decedent's body" and that any action taken without plaintiff's consent (for example, transferring the body itself or removing body parts) was wrongful. Even assuming that the common law imposed such a duty,[3] it is obvious that the Legislature has intentionally abrogated any such duty in § 23–4–7. Specifically, § 23–4–7 provides in pertinent part that

"(a) Where any person shall die in any manner to suggest the possibility of a criminal act or as the result of violence or apparent suicide, or from a criminal abortion *or in any suspicious or unusual manner;* it shall be the duty of any person having knowledge of such deaths to immediately notify the police of the city or town where the body of the deceased person lies or to notify the office of state medical examiners. The same procedure shall be followed upon discovery of anatomical material suspected of being or determined to be a part of a human body.

Any person who shall wilfully neglect or refuse to report such death or who without an order from an agent of the office of medical examiners shall wilfully touch, remove or disturb the clothing, or any article upon or near such body, shall be guilty of a misdemeanor.

(c) When any person may appear to have met death when unattended by a physician, *or in any unnatural manner, or as the apparent result of the negligence of another person, or as the consequence of any physical or toxic injury incurred while employed,* or from the use of any addictive or unidentifiable chemical agent, or from an infectious agent capable of spreading an epidemic within the state; *it shall be the duty of any physician, law enforcement officer, funeral director, hospital official having knowledge of such deaths,* or of any other person having responsibility for burial or cremation of such deceased person *to notify the office of the state medical examiners."* (Emphasis added.)

■ It is clear to us that in accordance with the above statutory language, defendants had an actual duty to notify the medical examiner of Mr. Avery's death. His death was indeed "unusual," it may very well have resulted from "the negligence of another person," and it occurred as the result of a "physical injury * * * incurred while employed." Section 23–4–7. Thus, defendants' behavior was in compliance with their legal duty.

■ In addition, the medical examiner's office acted within its statutory duty to

---

**3.** The plaintiff's theory on this point is that defendants breached their "common-law fiduciary duty" to maintain her husband's body, subject to her plans of disposition as "trust beneficiary," and such duty required maintenance of the body *in the same condition* as existed when death occurred. The plaintiff cites a book by Jackson entitled *The Law of Cadavers* as well as a 1917 New York case as support for the above proposition.

investigate outlined in § 23–4–4, which provides that

"[t]he office of state medical examiners shall have authority to make postmortem examinations, to undertake inquests and to perform autopsies where there may be in its judgment a reasonable belief that the manner of death could be pronounced as: (i) *death by a homicide, suicide, or casualty,* (ii) death due to a criminal abortion, (iii) *death due to an accident involving lack of due care on the part of a person other than the deceased,* (iv) *death which is the immediate or remote consequences of any physical or toxic injury incurred while the deceased person was employed,* (v) death due to the use of addictive or unidentifiable chemical agents; or (vi) death due to an infectious agent capable of spreading an epidemic within the state." (Emphasis added.)

Other jurisdictions that have addressed the issue of whether the consent of a decedent's next of kin is needed—where statutory law grants a medical examiner authority to perform an autopsy or to examine a corpse—have held that such consent is not required. The rationale for this conclusion is that the public interest in determining the cause of death in the types of factual situations outlined above in § 23–4–4 is believed to outweigh the rights of family members regarding the body. *See Donnelly v. Guion,* 467 F.2d 290 (2d Cir.1972); *Leno v. St. Joseph Hospital,* 55 Ill.2d 114, 302 N.E.2d 58 (1973); *Allinger v. Kell,* 102 Mich.App. 798, 302 N.W.2d 576 (1981). In accordance with this line of cases we conclude that such consent is not required in a factual situation falling within the parameters of § 23–4–4.

On appeal from the granting of a Rule 12(b)(6) motion to dismiss, this court views the allegations of the complaint as true and in the light most favorable to the plaintiff. The complaint shall not be dismissed unless it appears beyond a reasonable doubt that under any conceivable set of facts which might be proven in support of claims, a plaintiff will not be able to prove his or her right to relief. *Salvadore v. Major Electric & Supply, Inc.,* —— R.I. ——, ——, 469 A.2d 353, 357 (1983); *Berberian v. Solomon,* 122 R.I. 259, 405 A.2d 1178 (1979); *Rosen v. Restrepo,* 119 R.I. 398, 380 A.2d 960 (1977).

We conclude that the trial justice acted properly in dismissing plaintiff's complaint. His ruling was based upon the relevant statutory authority. Furthermore, plaintiff's insistence that the court accept as true the allegation in her amended count 9 that the transfer of the body to the medical examiner was "not required by law" and that plaintiff's consent was required prior to any such transfer not only amounts to a legal conclusion (as opposed to the required allegation of fact) but also constitutes a misstatement of law.

We conclude that based upon the reasoning articulated above and the language of the relevant statutory provisions, the trial justice's dismissal of the plaintiff's amended complaint containing counts 9 and 10 was justified.

We affirm the judgment entered on December 3, 1982, in the Superior Court dismissing the plaintiff's amended complaint, and her appeal is therefore denied and dismissed.

WEISBERGER, J., did not participate.