**John DOE, a minor, by and through HIS PARENTS AND NATURAL GUARDIANS**

v.

**EAST GREENWICH SCHOOL DEPARTMENT et al.**

No. 2005-172-Appeal.

Supreme Court of Rhode Island.

June 13, 2006.

**1262**

George Lieberman, Esq., Providence, for Plaintiff.

Jennifer Wood, Esq., for the R.I. Department of Elementary and Secondary Education.

John Cloherty, III, Esq., Boston, MA, for the East Greenwich School Department.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

This appeal concerns the requirement that a litigant who asserts on behalf of a child that he or she is being denied his or her guarantees under federal law to a free and appropriate public education exhaust the administrative process before bringing a civil suit to enforce these guarantees. More specifically, the plaintiff, John Doe[1] (plaintiff), appeals from a judgment dismissing his civil suit brought in Superior Court against the defendants, East Greenwich School Department (school department), Rhode Island Department of Elementary and Secondary Education (department of education), Peter McWalters in his capacity as Commissioner of Elementary and Secondary Education (McWalters), and the Rhode Island Board of Regents for Elementary and Secondary Education (board of regents) (collectively defendants). A motion justice dismissed the plaintiff's suit for failure to state a claim upon which relief could be granted because he failed to exhaust administrative remedies. This case came before the Supreme Court for oral argument on March 28, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth in this opinion, we affirm the dismissal of the plaintiff's suit.

## I

### Facts and Travel

For the purposes of reviewing this dismissal for failure to state a claim upon which relief can be granted, we accept as true the following facts, which are well-pleaded in plaintiff's complaint.[2]

---

1. Since plaintiff is a minor, his parents have brought this suit on his behalf. "John Doe," of course, is a pseudonym designed to protect his privacy.

2. See Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete, 845 A.2d 270, 286 (R.I.2004). Although we remain cognizant of our liberal pleading standard, see Bragg v. Warwick Shoppers World, Inc., 102 R.I. 8, 11–12, 227 A.2d 582, 584 (1967), the motion justice did not err when he refused to adopt all the assertions contained in plaintiff's complaint as true. Allegations that are more in the nature of *legal* conclusions rather than factual assertions are not necessarily assumed to be true. See Avery v. Rhode Island Hospital, 495 A.2d 254, 257 (R.I.1985); see also Robert B. Kent et al., Rhode Island Civil Procedure § 12:9, III–44 (West 2006) (stating "sweeping legal conclusions are not admitted" for the purposes of reviewing a Super. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted). Therefore, we need not assume as true, for example, plaintiff's allegations that the school department "violated state and federal law by failing to have an appropriate IEP in effect for the [p]laintiff as of the commencement of the 2003–2004 school year," and that "[i]t would be futile and irreparably harmful to the [p]laintiff to

In June 2003, plaintiff, a seven-year-old diagnosed with Asperger's Syndrome,[3] proposed to the school department an individualized education program (IEP) for the 2003–04 school year. That proposal was "based upon recommendations from expert consultants" who had observed plaintiff. The school department told plaintiff it would respond within two weeks. After it failed to do so, plaintiff promptly requested a due process hearing before the department of education on July 9, 2003.

In late July 2003, the department of education appointed a hearing officer to plaintiff's case. At approximately the same time, plaintiff proposed to the school department a consent judgment containing an IEP that, again, was "consistent with the recommendations of the expert consultants who actually observed" plaintiff. At a prehearing conference before the department of education on August 8, 2003, the school department declined to respond to the consent judgment, and the hearing officer scheduled hearing dates for early September.

Those September hearing dates, however, were postponed. The plaintiff and the school department agreed to reschedule the hearings for early October and also agreed that the school department would provide some services for plaintiff during the first month of the school year. Also, plaintiff and the school department agreed, pursuant to the hearing officer's order, to hold an "IEP meeting" on September 29, 2003, in which two "consultants" would participate. The school department, however, postponed that meeting until October 2, 2003; in doing so, the school department assured plaintiff that the two consultants would be able to attend that meeting on the rescheduled date. The plaintiff later learned that the consultants were both unavailable on October 2, and that they had never been asked if they would be available on that date.

On October 3, 2003, the hearing officer continued until early November the due process hearing scheduled for early October. This continuance was designed to allow the school department to complete its proposed IEP before the hearing. The hearing officer denied the school department's additional request to continue that hearing.

After two continuances, plaintiff notified the school department on October 31, 2003, that he believed further participation in the administrative process would be futile. Nevertheless, plaintiff continued in the administrative process. At a due process hearing on November 3, 2003, the hearing officer declined to implement plaintiff's proposed IEP and also declined to enter plaintiff's consent judgment. In turn, at an IEP meeting on November 5, 2003, plaintiff rejected the school department's proposed IEP.

In an obvious effort to avoid further delay, the hearing officer scheduled due process hearings for the *evenings* of January 20, 21, and 22, 2004.[4] In anticipation of those hearings, the parties agreed that

continue with the administrative process as there is no likelihood of a resolution sufficiently before the end of the school year to provide [p]laintiff with any meaningful needed services."

3. According to the amicus brief submitted by the Asperger's Association of New England, Asperger's Syndrome is a "neurobiological communication disorder affecting key aspects of social awareness and interaction, language usage, and sensory integration." The Court thanks the Asperger's Association of New England for its insightful brief.

4. Counsel for one of the parties had a trial scheduled for those days, which precipitated the need to schedule the hearings in the evening.

plaintiff's expert witness would be allowed to observe plaintiff in his school environment. The school department's attorney, however, failed to notify the school of the expert's planned visit, and when the expert arrived at the school, the school principal refused to allow her to observe plaintiff. At the request of the school department, the hearing officer then postponed until February 24, 2004, the hearings scheduled for January 20, 21, and 22. At that time, the hearing officer planned to address plaintiff's following requests: (1) that the hearing officer require the school department to pay the expert's fees for her time on the day she was prevented from observing plaintiff; and (2) that the hearing officer issue an order requiring the school department to allow the expert to observe plaintiff without any interference. The plaintiff objected to this continuance and declined to participate in any further proceedings before the department of education.[5]

Although the fact is not contained within the four corners of his complaint, plaintiff's parents have removed plaintiff from the East Greenwich school system.[6]

Instead of continuing to pursue his claims before the department of education, plaintiff filed this civil action in Superior Court alleging that defendants had failed to adopt and implement a timely IEP and that, therefore, they were subject to liability pursuant to 42 U.S.C.A. § 1983 (West 2003).[7] The complaint requested both money damages and equitable relief. The defendants moved to dismiss plaintiff's complaint, pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.[8] After hearing argument from counsel for plaintiff, counsel for the department of education and the board of regents, and counsel for the school department, the motion justice issued a written decision in which he dismissed plaintiff's complaint, holding that plaintiff had failed to plead facts sufficient to prove that he had exhausted the administrative process. The plaintiff now appeals.

## II

### Analysis

When reviewing the dismissal of a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), " 'this Court examines the allegations contained in the * * * complaint [and] assumes them to be true.' " *Retirement Board of the Employees' Retirement System of Rhode Island v. DiPrete*, 845 A.2d 270, 286 (R.I.2004). Dismissal is appropriate only when " 'it is

---

5. Although not included in plaintiff's complaint, the motion justice did note that a hearing was held on February 24, 2004, that plaintiff did not attend that hearing, and that the hearing officer dismissed plaintiff's case.

6. At oral argument before this Court, the school department stated that plaintiff's parents removed him from the East Greenwich school system at the end of the 2003–04 school year.

7. The defendants initially removed this suit to federal district court, only to have it returned to state court. During their short stint in federal district court, an entry of default was entered against the department of education, McWalters, and the board of regents. The motion justice in the Superior Court, however, vacated that entry of default. None of these procedural maneuvers, however, is at issue in this appeal.

8. We note here for the sake of clarity that defendants elected not to ground their motion to dismiss on Rule 12(b)(1) for lack of subject matter jurisdiction. *See Weber v. Cranston Public School Committee*, 245 F.Supp.2d 401, 410 n. 8 (D.R.I.2003) (describing a split in authority on the legal issue of whether the failure to exhaust administrative remedies is "a jurisdictional flaw").

clear beyond a reasonable doubt that * * * plaintiff would not be entitled to relief under any set of facts that could be proven.'" *Id.*

■ A general sketch of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.A. §§ 1400 through 1487 (West 2000 & Supp.2006)—or at least those aspects of the federal statute that are applicable to this appeal—is required before proceeding to the precise issues at hand. As is our usual practice, we will be influenced by federal interpretations of a federal statute. *See, e.g., Marques v. Harvard Pilgrim Healthcare of New England, Inc.,* 883 A.2d 742, 749 (R.I.2005) (interpreting Title III of the Americans with Disabilities Act of 1990 in accordance with federal precedent).

All children with disabilities are entitled to a "free appropriate public education that emphasizes special education and related services designed to meet their unique needs * * *." 20 U.S.C.A. § 1400(d)(1)(A). An IEP, which is defined as "a written statement for each child with a disability that is developed, reviewed, and revised" in accordance with certain statutory procedures, *id.* § 1401(14), is the backbone of a disabled child's free, appropriate public education. The United States Supreme Court has elaborated on the nature of IEPs in this way:

> "Prepared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child, the IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives. * * * The IEP must be reviewed and, where necessary, revised at least once a year in order to ensure that local agencies tailor the stat-

utorily required 'free appropriate public education' to each child's unique needs." *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

Beyond these substantive guarantees, the IDEA mandates that state educational agencies "establish and maintain procedures * * * to ensure that children with disabilities and their parents are guaranteed procedural safeguards * * *." 20 U.S.C.A. § 1415(a). Many of those procedures are designed to allow the parents to have an active role in their disabled child's education, providing, for example, that: (1) parents are allowed to examine records related to their child; (2) parents are allowed to participate in certain meetings related to their child's education; and (3) parents can obtain an independent educational evaluation of their child. *Id.* § 1415(b)(1). In the event that parents are dissatisfied with the individualized education of their child, they may file a complaint with regard "to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6). The complaint is filed with the state education agency, *id.* §§ 1415(a), 1415(b)(6), which then must afford the parents an impartial due process hearing before a neutral hearing officer. *Id.* § 1415(f). While the hearing is pending, the child will remain in his or her "then-current educational placement," unless the parents and the state agency agree otherwise. *Id.* § 1415(j).

■ This due process hearing—which in this state is afforded by the department of education, *see* G.L.1956 § 16-39-1—is the anticipated avenue that parents will travel to ensure that their child is receiving a free, appropriate public education. Parents may bring suit after the completion of the due process hearing, 20

U.S.C.A. § 1415(i)(2)(A), but they first are required under the IDEA to exhaust the administrative process available through the department of education prior to initiating any civil action, *id.* § 1415(*l*); *see also Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir.2000). The exhaustion requirement pertains even when, as here, "an IDEA-based claim" is brought pursuant to 42 U.S.C.A. § 1983. *Frazier v. Fairhaven School Committee*, 276 F.3d 52, 64 (1st Cir.2002).

 Exhaustion of administrative remedies, however, is not always required. *See Honig*, 484 U.S. at 326–27, 108 S.Ct. 592. The United States Court of Appeals for the First Circuit has delineated the following exceptions to the IDEA's exhaustion requirement, indicating that exhaustion is not required when: (1) the administrative process would be "futile or inadequate;" (2) the administrative process would "waste resources, and work severe or irreparable harm on the litigant;" (3) the issues raised "involve purely legal questions;" or (4) the agency prevents "the litigant from pursuing [his or] her claim at the administrative level." *Pihl v. Massachusetts Department of Education*, 9 F.3d 184, 190–91 (1st Cir. 1993); *see also Rose*, 214 F.3d at 210–11. We are in full agreement with the First Circuit's categorization of the several exceptions to the normal rule requiring exhaustion of administrative remedies.

 Before applying the four exceptions to the facts of this case, we first must set forth the general policy behind the exhaustion requirement. In discussing exhaustion in a different context, we have extolled the virtues of fully navigating the waters of the administrative process: "Requiring the exhaustion of administrative remedies (1) 'aids judicial review by allowing the parties and the agency to develop the facts of the case, and (2) it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, per-

haps avoiding the necessity of any judicial involvement.'" *Almeida v. Plasters' & Cement Masons' Local 40 Pension Fund*, 722 A.2d 257, 259 (R.I.1998) (quoting *Burns v. Sundlun*, 617 A.2d 114, 117 (R.I.1992)). In a similar vein, the First Circuit has emphasized in great detail the merits of enforcing the exhaustion requirement under the IDEA:

"Indeed, special benefits adhere to the exhaustion requirement in the IDEA context. The IDEA's administrative machinery places those with specialized knowledge—education professionals—at the center of the decisionmaking process, entrusting to them the initial evaluation of whether a disabled student is receiving a free, appropriate public education. These administrative procedures also ensure that educational agencies will have an opportunity to correct shortcomings in a disabled student's [IEP]. * * * This too makes sense because the problems attendant to the evaluation and education of those with special needs are highly ramified and demand the best available expertise.

"The reliance of courts upon the detailed evidentiary record developed during the due process hearing further underscores the importance of the IDEA's administrative procedures. * * * Allowing plaintiffs to bypass the IDEA's administrative process en route to state or federal court disrupts this carefully calibrated balance and shifts the burden of factfinding from the educational specialists to the judiciary. That phenomenon is directly at odds with the method of the IDEA: '[t]o allow parents to come directly to federal courts will render the entire scheme [of the IDEA] nugatory.'" *Frazier*, 276 F.3d at 60–61 (quoting *Crocker v. Tennessee Secondary School Athletic Association*, 873 F.2d 933, 935 (6th Cir.1989)).

Although that court has noted that "exhaustion is not a rigid requirement," *Pihl*,

9 F.3d at 190 n. 10, the strong policy considerations that undergird the exhaustion doctrine may explain why, in practice, the First Circuit repeatedly has insisted that litigants exhaust the administrative process under the IDEA. *See Rafferty v. Cranston Public School Committee,* 315 F.3d 21, 26 (1st Cir.2002); *Frazier,* 276 F.3d at 64; *Rose,* 214 F.3d at 210; *Weber v. Cranston School Committee,* 212 F.3d 41, 51–52 (1st Cir.2000).

Stated broadly, the determinative issue on appeal is whether the facts pleaded in plaintiff's complaint suffice to invoke one of the applicable exceptions to the exhaustion requirement. In support of his claim that he should be excused from exhausting the administrative process, plaintiff emphasizes both the time delay between the initial request for an IEP in June 2003 and his decision to forgo further proceedings before the department of education in February 2004, as well as the school department's refusal to allow plaintiff's expert to observe plaintiff in his school environment. The defendants, in response, argue that plaintiff's decision to abandon the due process hearings in favor of filing a civil action actually further delayed any resolution of this dispute. Since plaintiff does not argue that his dispute with defendants involves pure questions of law (the third exception recognized by the First Circuit), we address *seriatim* the futility/inadequacy, irreparable harm, and agency prevention exceptions.

### A

### Futility/Inadequacy

■ To briefly reiterate, "[e]xhaustion may not be required where the pursuit of administrative remedies would be futile or inadequate." *Pihl,* 9 F.3d at 190. The

plaintiff advances two distinct arguments relevant to this exception.

### 1

### Futility of the Administrative Process

■ First, plaintiff asserts that the department of education violated the IDEA when it failed to resolve his complaint within forty-five days of his request for the hearing. We interpret this argument as contending that continuing with the administrative process would have been futile.

■ "A plaintiff does not have to exhaust administrative remedies if [he or] she can show that the agency's adoption of an unlawful general policy would make resort to the agency futile * * *." *Rose,* 214 F.3d at 210–11. Although plaintiff cites provisions of the IDEA to support his argument that the department of education did not proceed in a timely manner, our research has divulged that the forty-five-day time limitation actually is the product of state and federal regulation. The applicable state regulation provides that the department of education shall render a "final decision," which must be "mailed to each of the parties," no later "than 45 days after the receipt of a request for a hearing." 08–010–002 R.I.Code R. § 300.511(a) (Weil 2006). That forty-five-day limitation is not nearly as strict as plaintiff indicates; the regulation expressly allows a hearing officer to "grant specific extensions of time beyond the [forty-five-day time period] at the request of either party." *Id.* § 300.511(b). The federal regulation employs identical language. 34 C.F.R. § 300.511 (2005). Since the time period may be extended upon a unilateral request by either party, the forty-five-day limitation really is more in the nature of a guideline than a rigid requirement.[9]

9. In interpreting the regulation in this way, we are cognizant of the holdings of some other jurisdictions that apply the forty-five-

day limitation strictly. *See, e.g., Blackman v. District of Columbia,* 277 F.Supp.2d 71, 78–79 (D.D.C.2003). Since those cases seem to

According to plaintiff's own complaint, the hearing officer postponed or continued several hearing dates, but did so at the request of the school department or by party agreement. For example, the postponement of the hearing dates from late January to February 24, 2004, which was the last delay before plaintiff filed his civil suit, was requested by the school department. Furthermore, although plaintiff did file his request for a due process hearing in July 2003, he agreed to postpone the hearing from September 4, 2003, to October 3, 2003. Therefore, because of these requested postponements and continuances, we cannot hold that the school department violated the applicable regulations.

This is not to say that a hearing officer repeatedly may grant continuances of a due process hearing in perpetuity as long as the school department requests continuances. We expressly indicate that any attempt to abuse this exception to the forty-five-day limitation could result in our holding that further proceedings before the administrative agency would have been futile, but that is not the case here. Instead, the complaint reveals that the parents of John Doe and the school department had little dialogue before he requested a due process hearing in the summer before the school year. Accordingly, the hearing officer obviously attempted to bring the parties together for an initial IEP meeting, which was not achieved until early November 2003, before the parties proceeded to the more adversarial due process hearing. It seems reasonable to infer that some of these continuances, especially those granted during the autumn of the school year, are the sort of continuances anticipated by those who drafted the exception to the forty-five-day limitation.

**2**

### Inadequacy of the Remedy

█ The plaintiff next argues that the department of education could not afford him an adequate remedy because the department of education "had no power to award private school expenses" to plaintiff, and the 2003–04 school year was over by the time the motion to dismiss had been filed.

█ It is clear that courts retain the power to "order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper * * *." *School Committee of Burlington, Massachusetts v. Department of Education of Massachusetts,* 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). Even when an administrative agency lacks that authority to award money damages for an IDEA-based claim,[10] a litigant cannot render that administrative process futile simply by claiming money damages.

---

ignore the party request exception, we find those authorities unpersuasive.

**10.** In contradistinction to the fact that the administrative agency in *Frazier v. Fairhaven School Committee,* 276 F.3d 52, 64 (1st Cir. 2002), could not award money damages, the defendants seem to contend that the department of education does have that authority. Specifically, the school department argues that "the applicable * * * regulations contemplate parents withdrawing their child and seeking reimbursement in appropriate circumstances *through the due process hearing procedures.*" (Emphasis added.) The department of education and the board of regents advance a similar argument. Since applicable law requires that a plaintiff claiming money damages still must exhaust the administrative process even if the administrative agency cannot award those money damages, we need not reach the precise legal question of whether Rhode Island's administrative agency, the department of education, has the authority to grant money damages.

*Frazier,* 276 F.3d at 64; *see also Rafferty,* 315 F.3d at 26 (applying *Frazier* ). The administrative agency may still be able to craft some other satisfactory remedy, and, in the event that no resolution is reached, "the administrative process, at the very least, should facilitate the development of a useful record." *Frazier,* 276 F.3d at 62. Under *Frazier,* plaintiff's argument fails; he may not simply bypass the administrative process because he has requested money damages.

### B

### Irreparable Harm

 The plaintiff argues that the school department's failure to implement an IEP by February 2004 caused him irreparable harm as a seven-year-old child diagnosed with Asperger's Syndrome. "The exception for irreparable harm 'is to be sparingly invoked.'" *Rose,* 214 F.3d at 212 (quoting *Komninos v. Upper Saddle River Board of Education,* 13 F.3d 775, 779 (3d Cir.1994)). This makes eminent sense. The IDEA, ostensibly in contemplation of situations such as this in which the parents and school department cannot agree on an IEP, includes what has become known as a "stay-put" provision, which requires a child to remain in his current educational placement during the pendency of the administrative process unless the parties and the state agency agree otherwise. 20 U.S.C.A. § 1415(j); *see also Schaffer v. Weast,* — U.S. ——, ——, 126 S.Ct. 528, 536, 163 L.Ed.2d 387 (2005) (discussing the import of Congress's decision to include the "stay-put" provision). The plaintiff's complaint, in fact, recognizes that his parents and the school department agreed in September that he would continue to receive services while the hearing was pending before the department of education.

Although we readily acknowledge the importance of affording educational services to a child with Asperger's Syndrome during his or her formative years, we cannot conclude that, simply because a plaintiff pleads in a complaint that a school department has failed to implement a new IEP by February of the school year, irreparable harm has then been visited on plaintiff to such a degree that he need not exhaust the administrative process. When parents dispute the educational placement of their disabled child, most parents—except those faced with the rare emergency situation that constitutes irreparable harm—must elect one of two options while pursuing claims at the administrative level: either keep their child in the setting established by his or her pre-existing IEP, or place their child in private school and seek reimbursement, as plaintiff's parents did here.

### C

### Agency Prevention

 "[E]xhaustion is not normally required where the agency has prevented the litigant from pursuing [his or] her claim at the administrative level." *Pihl,* 9 F.3d at 190–91. Prevention in this context has been interpreted as an agency's "unwilling[ness] to provide any further * * * proceedings to exhaust." *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 775 (1st Cir.1981).

 The plaintiff's own pleadings demonstrate that the department of education was willing to continue the administrative process. For example, the hearing officer attempted to schedule hearings on the evenings of January 20, 21, and 22, 2004, to prevent further delay. Furthermore, the fact that a hearing was held in February, after plaintiff had filed his civil action, demonstrates the department of education's continued willingness to retain jurisdiction over this dispute.

██ Rather than illustrate how the department of education's actions prevented him from further availing himself of the administrative process, plaintiff attempts to bootstrap the alleged "misconduct" of the school department into an argument that the administrative proceedings would have been futile. Although plaintiff cites cases from various jurisdictions to support his argument, this Court is reluctant to adopt a *fifth* exception—for school department misconduct—to the exhaustion doctrine.

██ Furthermore, even if we adopted a school department misconduct exception to the exhaustion doctrine, we do not think that the incidents outlined in plaintiff's complaint reveal a pattern of misconduct or bad faith. As alleged instances of that, plaintiff's complaint pointed to the school department's misrepresentation that two experts would be available at the October 2 meeting, and the school department attorney's failure to notify the principal at plaintiff's school that another expert would observe plaintiff in anticipation of the hearings scheduled for January. Although these two incidents may be examples of incompetence or inattention, they do not suggest a sinister motive on behalf of the school department to thwart plaintiff's attempts to implement an updated IEP and thereby deny plaintiff a free, appropriate public education. *Cf. Schaffer*, 126 S.Ct. at 537 (Stevens, J., concurring) ("I believe that we should presume that public school officials are properly performing their difficult responsibilities under [the IDEA].").

To summarize, we hold that, even when we assume all the well-pleaded facts in plaintiff's complaint to be true, plaintiff has failed to allege facts that could support a conclusion that, in this case, he should not be required to exhaust the administra-tive proceedings afforded by the department of education. It is clear beyond a reasonable doubt that none of the four recognized exceptions to the exhaustion requirement could apply in this case. In reaching that conclusion, we preserve the integrity of the procedural scheme created by the IDEA.

We must pause, however, to clarify that this opinion should not be read to imply that this Court condones the actions of the school department and the department of education. In fact, this Court is gravely concerned about and abhors the delays that took place before the department of education. Furthermore, we think parties must hire attorneys who are available so that proceedings may be completed in a timely fashion. Necessary administrative processes must not become bureaucratic nightmares reminiscent of Kafka in which the claims of individual citizens largely are ignored.[11]

We are keenly aware, especially after reading the amicus brief authored by the Asperger's Association of New England, of the many ways in which Asperger's Syndrome seriously impedes the education of a young child. Accordingly, an IEP designed to foster a more fertile learning environment for a child suffering from that disability must be formulated and implemented with a great sense of urgency. Had such a sense of urgency been in place here, then some of the delays—especially those in November through January of the school year—could have been avoided.

██ To that end, we direct the department of education, with the cooperation of the school department, to afford the plaintiff a comprehensive due process hearing *forthwith*. At that hearing, a hearing offi-

---

11. Another literary reference that springs to mind is Hamlet's most famous soliloquy, in which he bemoans "the law's delay" and "[t]he insolence of office." William Shakespeare, Hamlet act 3, sc. 1.

cer will determine, among other corollary issues, what IEP should have been implemented in the past, and should be implemented for the future, so that plaintiff may receive a free, appropriate public education pursuant to the IDEA. That due process hearing will be held *forthwith,* with no further continuances, and regardless of any scheduling conflicts of attorneys or hearing officers. And, at that hearing, we expect that all the parties will set aside any lingering acrimony in an effort to create a cooperative and productive environment as envisioned by the IDEA. The plaintiff deserves that much.

### Conclusion

For the foregoing reasons, we affirm the motion justice's dismissal of plaintiff's complaint for failure to state a claim upon which relief could be granted. The record shall be remanded to the Superior Court.