DECISION
Before this Court is a motion to dismiss pursuant to Super. R. Civ. P. Rules 12(b)(1) for lack of subject matter jurisdiction. The movant is intervenor David Sullivan, Tax Administrator for the State of Rhode Island (Tax Administrator). Alternatively, the Tax Administrator seeks dismissal under Rule 12(b)(6), or summary judgment under Rule 56, for failure to exhaust administrative remedies. Each Defendant joins in the Tax Administrator's motion, to which the Plaintiffs have objected.
 I Facts and Travel
This case is a putative class action related to the optional service contracts sold with Dell computers.[1] In October 2000 and December 2000 respectively, Plaintiffs Nicholas T. Long and Julianne Ricci each purchased computers from one of the Dell *Page 2 
entities named as Defendants in this suit.[2] Included with those purchases were service contracts which provided for repair or replacement if the computers later became defective. (Ex. A, D to Parrino Aff.) Those purchases also included charges for "ship. /or handling." Id. The Plaintiffs contend that sales tax and/or use tax was improperly charged on the service contract and the shipping/handling charges which were included in the purchase price. Dell states that whatever taxes were collected have been remitted to the Division of Taxation, and the Plaintiffs do not dispute this fact. (Parrino Aff. ¶¶ 22, 27.)
The Plaintiffs argue that Dell may only charge tax on sales of tangible personal property, which the service contracts and shipping/handling charges are not. The Plaintiffs have brought claims for negligence and for violation of the Unfair Trade Practices and Consumer Protection Act (UTPCPA), G.L. 1956 § 6-13.1-1 to 6-13.1-27. Dell states, and the Plaintiffs do not dispute, that the amount of the allegedly erroneous tax is approximately $50 for Mr. Long and Ms. Ricci combined. (Parrino Aff. ¶¶ 21, 25.) However, they also seek statutory damages of $200 per person under the UTPCPA, as well as declaratory and injunctive relief. See § 6-13.1-5.2(a) (providing for recovery of actual damages or $200, whichever is greater). This action has not yet been certified as a class action.
Dell's position is that if the price of the service contract is not stated separately from the hardware price, then tax must be computed on the entire transaction amount. They rely on a former regulation of the Division of Taxation which was in effect at the *Page 3 
time of the purchases, and which sets forth the "separately stated" concept. (Parrino Aff., ¶ 30; Regulation SU 89-126, Ex. H to Parrino Aff.)[3] Similar arguments are made with respect to shipping/handling charges. Dell suggests that while mere "shipping" charges would not be taxable when separately stated, "shipping and handling" charges are taxable even if separately stated. See G.L. 1956 § 44-18-12(b)(5) (repealed effective January 1, 2007) (defining the taxable "sales price" as not including "transportation charges separately stated").[4]
Therefore, Dell argues that taxes were properly collected on the service contracts and shipping/handling charges.
In 2005 and 2006, after this suit was instituted, Dell sought and obtained letter rulings from the Tax Administrator on the taxation issues involved in this case. The Tax Administrator found that transactions such as Ms. Ricci's purchase should not have included tax on the service contract because, as interpreted by the Division of Taxation, the invoice did "separately state" the service contract price. (Parrino Aff. ¶¶ 21, 27, 37, 38 and Ex. S at 5, Ex. T.) However, transactions such as Mr. Long's purchase were deemed proper because neither a "transportation" charge, nor a service contract price, were separately stated.[5] Id. Therefore, tax was properly collected on the entire amount of Mr. Long's purchase, as well as the shipping/handling charge to Ms. Ricci. The Plaintiffs dispute the correctness of these letter rulings, except as to Ms. Ricci's service contract, as well as the validity of former Regulation SU 89-126. *Page 4 
As a result of the Plaintiffs' claims, Dell filed "protective" refund claims with the Division of Taxation in the event that a court finds that they improperly collected and remitted taxes to the Division. The Division of Taxation has not acted on the refund claims, and is apparently awaiting the result of this action before deciding the merits of Dell's refund claims. See Ex. 1 and 2 to Pl's Mem. Opp. Tax Admin. Mot. to Dismiss, July 13, 2007.)
Dell moved for summary judgment in March 2007 based upon the merits (or alleged lack thereof) of the Plaintiffs' claims. In response, the Plaintiffs suggested that their motion could not be heard until the Tax Administrator was given notice of this proceeding. See G.L. 1956 §44-1-13 (requiring notice to the Tax Administrator whenever, in any court, a question arises as to the "constitutionality or construction of any tax statute," so that the Tax Administrator may appear and be heard). After receiving such notice, the Tax Administrator sought to intervene and brought the present motion.
During the July 30, 2007 hearing on the various motions, the Court indicated that it would grant the Tax Administrator's motion to intervene. The Court also indicated that it would rule on the Tax Administrator's motion, and would hear argument at a later date on Dell's summary judgment motion only if the Tax Administrator's motion was denied.
 II Analysis
Although the Plaintiffs have alleged negligence and violations of the UTPCPA, the Tax Administrator argues that the Plaintiffs' claims, in substance, are merely "tax matters" that belong in the District Court. Thus, he has moved to dismiss for lack of subject matter jurisdiction. However, he also argues that even a District Court action could not take place unless the Plaintiffs have exhausted their administrative remedies *Page 5 
with the Division of Taxation; therefore, he has also moved to dismiss for failure to state a claim or, alternatively, for summary judgment.
Subject matter jurisdiction goes to the very power of a court to hear a particular type of case. Bradford Assocs. v. R.I. Div. ofPurchases, 772 A.2d 485, 488 (R.I. 2001) (citations omitted). Therefore, a challenge to a court's subject matter jurisdiction can be raised at any time, cannot be waived, and jurisdiction cannot be conferred by mere consent of the parties. Id.; Warwick Sch. Comm. v. Warwick Teachers'Union, 613 A.2d 1273, 1276 (R.I. 1992) (noting that the issue of subject matter jurisdiction may also be raised sua sponte by the court).
The Superior Court is a court of general jurisdiction. A plaintiff can always bring suit in the Superior Court unless a statute specifically confers subject matter jurisdiction on another of Rhode Island's courts — for example, the Family Court, District Court, Probate Courts, or Workers' Compensation Courts. See Barone v. O'Connell, 785 A.2d 534, 535
(R.I. 2001) (per curiam). In this case, however, there are several competing statutes which may affect this Court's jurisdiction over the Plaintiffs' claims. Therefore, the Court will first consider the statutes which govern jurisdiction over UTPCPA claims, actions at law, and claims for equitable and declaratory relief. The Court will then consider whether the tax issues involved in this case deprive this Court of jurisdiction. Finally, if necessary, the Court will consider whether Plaintiffs are required to exhaust administrative remedies. *Page 6 
 A. Jurisdiction over UTPCPA Claims and Actions at Law
The Superior Court generally has exclusive jurisdiction over actions at law where the amount in controversy exceeds $10,000, and has concurrent jurisdiction with the District Court where the amount in controversy is between $5,000 and $10,000. See G.L. 1956 § 8-2-14(a);see also § 8-8-3(a)(1) (granting the District Court "exclusive original jurisdiction" over matters where less than $5,000 is in controversy). The Superior Court also has exclusive original jurisdiction "of suits and proceedings of an equitable character and of statutory proceedings following the course of equity." Section 8-2-13. Similarly, the Superior Court has jurisdiction over actions seeking declaratory judgments. G.L. 1956 § 9-30-1.
Another statute gives the Superior Court jurisdiction over UTPCPA claims, regardless of the amount in controversy. Section 6-13.1-5.2(a). Under the UTPCPA, any "person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss . . . may bring an action. . . in the superior court. . . to recover actual damages or two hundred dollars ($ 200) whichever is greater." Id.; see Park v. Ford Motor Co., (ParkI) 844 A.2d 687, 694 (R.I. 2004) (per curiam) (confirming that the jurisdiction conferred by the UTPCPA is independent of the amount in controversy requirement). That act also allows the Superior Court to grant "injunctive or other equitable relief." Section 6-13.1-5.2(b). Moreover, the Superior Court may exercise ancillary jurisdiction over the other damage claims of an individual plaintiff, even if those claims would not meet the amount-in-controversy requirement, when those claims are joined with a UTPCPA claim. See Park v. Ford *Page 7 Motor Co., (Park II), No. 2005-115-Appeal, 2007 R.I. LEXIS 49, at *6-10 (R.I. May 9, 2007) (per curiam).[6]
The Plaintiffs' complaint does not distinguish between the two named Plaintiffs, who both allege negligence and violations of the UTPCPA, and who both seek damages, declaratory relief, and injunctive relief. However, Dell moved for summary judgment on Mr. Long's UTPCPA claim because he made his computer purchase for business purposes, not consumer purposes. See § 6-13.1-5.2 (providing that UTPCPA act applies only to purchases "primarily for personal, family, or household purposes"); see also Scully Signal Co. v. Joyal, 881 F. Supp. 727, 741
(D.R.I. 1995) (quoting R.I. Depositors Economic Protection Corp. v.Hayes, 1994 WL 62165 at *5 (D. Mass. 1994)) (noting that the UTPCPA does not apply to "business people injured in the course of business"). The Plaintiffs do not dispute that Mr. Long made the purchase for business purposes and concede that he cannot bring a UTPCPA claim. (Pl's Mem. Opp. Summ. J. 37, May 14, 2007.)
It is clear that the allegedly erroneous taxes collected from either Mr. Long or Ms. Ricci — approximately $50 combined — are far less than the $5,000 threshold necessary for jurisdiction under § 8-2-14(a). (Substituted First Amended Class Action Complaint (Compl.) ¶¶ 33-35; Parrino Aff. ¶¶ 21, 25.) This is not problematic for Ms. Ricci, who has joined her negligence claim with a UTPCPA claim, because the Court may exercise ancillary jurisdiction over the negligence claim. However, since Mr. Long cannot bring a UTPCPA claim, this Court does not have ancillary jurisdiction over his negligence *Page 8 
claims — at least insofar as he seeks damages. Subject to the discussion below relating to tax matters, it is clear that this Court would ordinarily have jurisdiction of his claims for equitable and declaratory relief. See § 8-2-13, § 9-30-1.[7] However, the Court will dismiss Mr. Long's claims for lack of subject matter jurisdiction to the extent that he seeks damages arising from Dell's alleged negligence.
 B Jurisdiction over Tax Matters
As to all of Ms. Ricci's claims for relief, as well as Mr. Long's claims for equitable and declaratory relief, this Court's subject matter jurisdiction depends on the effect of various statutes giving the District Court jurisdiction over what the Court will loosely describe as "tax matters." See Owner-Operators Independent Drivers Ass'n v.State, (Owners-Operators) 541 A.2d 69, 73 (R.I. 1988) (referring variously to the District Court's exclusive jurisdiction over "tax matters" and "tax disputes"); G.L. 1956 § 44-19-25 (providing for appeal to the "sixth (6th) division of the district court for relief from the decision of the tax administrator" denying a claim for a tax refund); § 44-19-18 (stating that appeals "from administrative orders or decisions made pursuant to any provisions of this chapter are to the sixth (6th) division district court"); see also §§ 8-8-24 to 8-8-31
(setting forth procedures for review in the District Court of decisions of the Tax Administrator).
At the outset, the parties dispute whether this case may appropriately be characterized as a "tax matter." The Plaintiffs allege in their complaint that the Defendants had a "systematic and deliberate practice" of charging monies "characterized *Page 9 
by Defendants as lawful taxes. . . despite the fact that no such tax obligation" was owed, and that such funds were "falsely characterized as a sales tax." (Compl. ¶ 1.)[8] In order to prevail, therefore, the Plaintiffs must be correct that as a matter of tax law, the disputed amounts were improperly collected. This allegation forms the cornerstone of their complaint: if the disputed amounts were properly collected under the tax laws, then the Plaintiffs will have failed to demonstrate either negligence or a violation of the UTPCPA. As there is no significant dispute about the relevant facts, this is simply a legal question — albeit one that might be expected to arise in a refund claim before the Division of Taxation. However, while it is necessary for the Plaintiffs to demonstrate that the disputed amounts were not owed under the relevant tax laws, it is not necessarily sufficient. To prevail, the Plaintiffs must also demonstrate that by collecting the disputed amounts, the Defendants also were negligent and/or violated the UTPCPA.
The parties disagree on the impact of the Supreme Court's decision inOwners-Operators which, because of its factual similarities to this case, warrants an extended discussion. See 541 A.2d at 69-74. In that case, the plaintiffs alleged that a "fuel-decal-fee" statute, which required motor carriers to pay ten dollars for a decal to be displayed on their vehicle, was unconstitutional. Id. at 70. The plaintiffs, claiming on behalf of class of persons similarly situated, sought in the Superior Court a refund of any fees collected, a declaration of unconstitutionality, and an injunction preventing further collection of the fees. Id. The plaintiffs were an individual motor carrier and an incorporated association of such carriers. Id. The defendants were the State of Rhode Island and related parties associated with the State, including the Tax Administrator. Id. *Page 10 
The trial justice had dismissed the claims because the plaintiffs failed to exhaust administrative remedies, the district court had exclusive jurisdiction over the plaintiffs' claims for relief, and, therefore, the Superior Court lacked jurisdiction. See id. at 71. Refund proceedings had commenced in the Division of Taxation, but not yet concluded when the plaintiffs filed their Superior Court action.Id. at 70. The plaintiffs had argued that any further administrative proceedings would be futile, excusing them from the exhaustion requirement. Id. at 73. The Supreme Court did not decide the exhaustion issue, however, because even if exhaustion was not required, the Superior Court still lacked subject matter jurisdiction. Id.
The Court relied upon § 8-8-3(a)(6) which provides that the District Court has "exclusive jurisdiction" over "[a]ll other actions, proceedings, and matters of whatever nature which are or shall be declared to be within the jurisdiction of the court by the laws of the state." Further, the Court noted that the General Assembly "added [sections] 8-8-24 to 32 and provided for a trial de novo in the District Court on any appeal from a final decision of the Tax Administrator
concerning an `assessment, deficiency or otherwise.'"Owners-Operators, 541 A.2d at 73 (citations omitted, emphasis added). Because the District Court had jurisdiction of "assessments, deficiencies, or otherwise," that jurisdiction was exclusive.Id. at 72, 73 (citing Old Colony Bank v. Clark, 517 A.2d 249, 251 (R.I. 1986)); see § 8-8-24; see also § 8-8-27 (providing that refund actions "may not be brought" prior to "a final determination by the tax administrator denying the claim for a refund").
Since the plaintiff sought a refund from the Division of Taxation, the Supreme Court held in Owners-Operators that the "plaintiffs' suit is attributable to the subject of a *Page 11 
contested tax matter" and that any appeal must be to the District Court.See 541 A.2d at 72. The plaintiffs had attempted to avoid dismissal by characterizing their claim as "a constitutional challenge to the validity of a statute" and also a request for equitable relief.Id. at 71. The Court rejected their position because combining a refund claim with requests for declaratory and injunctive relief could not remove the claim from the District Court's exclusive jurisdiction. To hold otherwise "would effectually permit the circumvention of the statutory system that exists for resolution of tax disputes."Id. at 74. However, the Supreme Court did hold that the District Court could grant equitable relief "incidental to tax-refund suits."Id. at 74.
The Plaintiffs rely on two distinctions between the case at bar andOwners-Operators. First, they are not proceeding against the Tax Administrator, but rather, are seeking relief from private parties. The many statutes which confer jurisdiction of "tax matters" upon the District Court, upon which the Owners-Operators Court relied, generally refer only to "decisions of the tax administrator." See, e.g., §44-19-25; § 8-8-24. Therefore, although a question of tax law is involved, and the Plaintiffs contend that a tax regulation is invalid, the Plaintiffs are not directly challenging any decision of the Tax Administrator — i.e., a denied refund claim, assessment, deficiency, or otherwise.[9]
Second, the Plaintiffs' monetary claims are styled as damage claims arising from negligence and violation of the UTPCPA, and not merely as claims for refunds. If the Plaintiffs were seeking only refunds, then it would be sufficient to demonstrate that the *Page 12 
taxes were improperly collected under the tax laws. However, while their claims for actual damages may arguably be described as refund claims, they do not depend solely on whether the purported taxes were improperly collected under the relevant tax statutes. Rather, assumingarguendo that the taxes were improperly collected, the Plaintiffs can prevail only if collection of those taxes constituted either negligence or a violation of the UTPCPA. Moreover, in addition to seeking actual damages — which may merely be the amount of the improperly collected tax — the Plaintiffs seek statutory damages of $200 per person under the UTPCPA.
The Court is persuaded that these distinctions are substantial and distinguish this case from Owners-Operators. The Plaintiffs' monetary claims involve more than the mere refund claim that was asserted in that case. Therefore, this is not a case involving "tax matters" as that term was understood in Owners-Operators, and the Plaintiffs are entitled to have their claims adjudicated in this Court.[10] By requiring notice to the Tax Administrator whenever the "constitutionality or construction of any tax statute or the validity of the assessment of any tax is in question," see § 44-1-13, the legislature recognized that tax issues may arise in private litigation which involves more than simply a challenge to an assessment or a claim for a refund. This is such a case.
Obviously the taxation question involved in this case is one in which the Superior Court is not capable of setting precedent for future refund claims in the District Court, or binding any party other than those presently before the Court. However, it is not unusual for a court to consider disputes involving the laws of other jurisdictions. For example, a Plaintiff could bring an action in Superior Court for violation of his or her civil rights under 42 U.S.C. § 1983 — a question of federal law — for which reference to federal *Page 13 
statutes and decisions are necessary. Similarly, the construction of another state's laws may be relevant to a dispute.[11] Although any decision of this Court, or even our Supreme Court, would not constitute binding authority on a tribunal of the federal government or a sister state, this Court would still be competent to decide the issues presented before it so long as it otherwise has subject matter jurisdiction. Similarly, this Court may decide the taxation question as a necessary step in resolving the negligence and UTPCPA claims before it. Therefore, when and if it becomes necessary, the Court will decide the taxation issue. In doing so, the Court will consider whatever relevant authorities exist on the subject, as well as any position taken by the Division of Taxation, and will accord appropriate levels of deference to each authority.[12]
 C Exhaustion of Administrative Remedies
Having found that the Court has subject matter jurisdiction to hear some of the Plaintiffs' claims, the Court must consider whether exhaustion of administrative remedies is a prerequisite to bringing suit on those claims. As the Court described above, it considers the subject matter of this case to be claims among private parties for negligence and for violation of the UTPCPA.[13] Normally, there would be no requirement that a party exhaust administrative remedies — if any existed — before bringing such claims in *Page 14 
Superior Court. However, in this case a question of tax law is inextricably involved in the resolution of those claims. Moreover, it is clear that each Plaintiff could have sought refunds from the Division of Taxation if they so desired, subject to the relevant limitations period.See § 44-19-25 (providing for refund claims before the Division of Taxation and appeals to the District Court). The Plaintiffs could also have sought a declaratory ruling from the Division of Taxation.See Procedures in Handling Requests for Issuance of Declaratory Rulings, 01 080 CRIR 011 (2007). The Plaintiffs agree that they have not sought either remedy from the Tax Administrator. Therefore, the Court must address whether the Plaintiffs should be required to pursue one of those remedies prior to, or in lieu of, their Superior Court action.
The purpose of the exhaustion requirement is to aid judicial review "by allowing the parties and the agency to develop the facts of the case" and also to promote judicial economy by "avoiding needless repetition of administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement." Doe v. E. Greenwich Sch.Dep't, 899 A.2d 1258, 1266 (R.I. 2006) (internal quotations omitted).
In this case, it is difficult to see how judicial resources would be conserved by requiring the Plaintiffs to seek a refund or declaratory ruling before the Division of Taxation. If the Division found in favor of the Plaintiffs, and refunded any improperly collected amounts, then perhaps the negligence claim would become moot if their actual damages were remedied. However, the Division is not capable of adjudicating a violation of the UTPCPA and awarding $200 in statutory damages. Therefore, it is unlikely that this Court's involvement could be entirely avoided. Moreover, when a case *Page 15 
"involve[s] purely legal questions," exhaustion is not required, because there is less need for developing the facts of the case. See id. at 1266.
Finally, Dell has suggested that adjudicating the taxation issue in this case could have an unfair impact upon the Defendants, because there is no guarantee that the Division of Taxation or District Court will grant their "protective" refund claims if they are found liable here. Therefore, they contend that they may be "whipsawed" if this Court finds that they improperly collected the tax. However, the Tax Administrator has now become a party to this action, so Dell ought to find some solace in the doctrine of collateral estoppel.[14]
For these reasons, although the Plaintiffs had the option to proceed before the Division of Taxation to seek at least partial redress of their grievances, the Court holds that they were not required to do so.[15]
 V Further Proceedings
The Court believes that the allocation of jurisdiction over "tax matters" is one of importance, not only in the matter before the Court, but in future cases involving similar facts. The Tax Administrator has a clear interest in ensuring the efficient administration of the tax laws, and his ability to do so is made more difficult by the uncertainty that this action has caused with regards to the taxability of service contracts and shipping/handling charges. That difficulty is evidenced by the decision to hold Dell's tax refunds claims *Page 16 nisi, pending the possibility of this Court's adjudication of the tax questions involved in this case.
Therefore, the Court has considered certifying a question or questions to the Supreme Court based upon § 9-24-27, which states in pertinent part that
 "Whenever in any proceedings, . . . in the superior court . . ., any question of law shall arise . . . which, in the opinion of the court, or in the opinion of the attorney general if the state is a party to the proceeding or if he or she has intervened therein, is of such doubt and importance and so affects the merits of the controversy that it ought to be determined by the supreme court before further proceedings, the court in which the cause is pending shall certify the question or motion to the supreme court for that purpose and stay all further proceedings until the question is heard and determined."
Our Supreme Court has stated that trial justices should not certify questions "until he or she first carefully considers the question or questions sought to be certified. . . ." Pierce v. Pierce, 770 A.2d 867,870 (R.I. 2001). "By making a ruling or decision, after the benefit of counsels' research and arguments, and then certifying a question to this Court, the trial justice . . . creates a thorough record and provides this Court with the benefit of his or her reasoning and rationale in making our decision." Pierce v. Pierce, 770 A.2d 867, 870 (R.I. 2001).
The Court believes that it has reached the correct resolution of the Tax Administrator's motion based on the reasoning contained herein. However, it also believes that there are certain questions of law upon which reasonable minds may differ, and this may be such a question. There is a substantial potential that judicial resources may be wasted if this matter proceeded through motion practice, class certification, and possible trial, only then to have the Supreme Court eventually rule that this Court lacked *Page 17 
jurisdiction to hear the case. During that time, doubt over the taxability of service contracts and shipping/handling charges may become prejudicial to the Tax Administrator.
Dell's summary judgment motion may resolve the present action even if the Court's resolution of the Tax Administrator's motion was erroneous. Therefore, this Court will not certify a question regarding this Court's jurisdiction. Nevertheless, because of the Tax Administrator's strong interest in the allocation of authority over "tax matters," the Court will entertain a motion from the Tax Administrator to stay these proceedings for a period of time if he wishes to seek immediate review of this Court's ruling. Otherwise, the Court will proceed with consideration of the motion for summary judgment.
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court will deny the motions of the Tax Administrator and Dell to dismiss for lack of subject matter jurisdiction, or in the alternative, for dismissal or summary judgment due to failure to exhaust administrative remedies.
Counsel for the Plaintiffs may present an order consistent herewith which shall be settled after due notice to counsel of record. The parties are then directed to schedule a chambers conference with the Court, within ten days of the entry of that order, to determine the course of further proceedings in this matter.
[1] This is the second written decision in this case. This Court previously ruled that issues involved in this case are not subject to mandatory arbitration. Defontes v. Dell Computers Corp., 2004 R.I. Super. LEXIS 32 (R.I.Super.Ct. 2004).
[2] Defendants Banctec, Inc. and Qualxserv LLC perform the service contracts sold with Dell computers. The Court will refer to these Defendants, along with Dell Computer Corp., Dell Catalog Sales L.P. (Dell Catalog), and Dell Marketing L.P. (Dell Marketing) as simply "Dell" unless specificity is required. Incidentally, Dell Catalog has merged with Dell Marketing since the filing of this lawsuit. (Aff. of Emily Parrino, ¶ 3, Mar. 12, 2007.)
[3] Regulation SU 89-126 has been superseded by SU 00-126 which, for purposes of this case, is not materially different from its predecessor.See 01 086 CRIR 146 (2007).
[4] Under the new statutes effective January 1, 2007, both "shipping" and "shipping and handling" charges would be taxable. See §44-18-12(a)(iv) (specifically including "delivery charges" in sales price); see also § 44-18-7.1(i) (defining "delivery charges" to include shipping, handling, etc.)
[5] Mr. Long's purchase included only a "shipping and handling" charge, but not a mere "shipping" charge. Therefore, the letter ruling indicates that the shipping and handling charge is taxable.
[6] In Park II, the Supreme Court relied upon Rule 18(a) of the Superior Court Rules of Civil Procedure as permitting ancillary jurisdiction over claims which otherwise would not meet the $5,000 amount-in-controversy requirement, but which were joined with UTPCPA claims. 2007 R.I. LEXIS 49 at *9; see Super. R. Civ. P. Rule 18(a) ("A party asserting a claim to relief as an original claim . . . may join . . . as many claims, legal or equitable, as that party has against an opposing party.")
[7] The Court takes no position at this stage on whether Mr. Long is entitled to injunctive or declaratory relief as a result of Defendants' alleged negligence. It only holds that it has jurisdiction to decide those issues, subject to Part II.B of this decision.
[8] The complaint also variously refers to amounts "purporting to be a `tax.'" See, e.g., Compl. ¶¶ 27, 28.
[9] Although the Division of Taxation issued two letter rulings on the tax issue underlying this suit, those letter rulings lack precedential value. See Procedures in Handling Requests for Issuance of Declaratory Rulings, 01 080 CRIR 011-2 (2007) (noting that letter rulings are unlike declaratory rulings and "may not be relied upon by any taxpayer other than the taxpayer who requested" the ruling). Declaratory rulings, in contrast, have precedential value and represent the position of the Division of Taxation. Id. at 011-3. Neither letter rulings nor declaratory rulings bind the Division of Taxation prospectively if "a decision on point is issued by the Rhode Island or Federal Courts."Id. at 011-2.
[10] The Court takes no position at this time as to whether or not those claims have merit.
[11] When a dispute over foreign law arises, construction of such laws is a question of law for the court and is reviewable. G.L. 1956 §9-19-5.
[12] The Defendants have argued that a Court must defer to an agency's reasonable interpretation of a statute that it is empowered to enforce.See, e.g., Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 344
(R.I. 2004); see also § 44-19-33 (noting that rules and regulations intended to carry out chapters 18 and 19, relating to sales/use tax, "when reasonably designed to carry out the intent and purpose of those chapters, are prima facie evidence of their proper interpretation"). Conversely, the Plaintiffs argue that revenue statutes are to be strictly construed against the taxing authority. See, e.g., George, Inc.v. Norberg, 444 A.2d 868, 870 (R.I. 1982) (stating that "this court has long adhered to the rule that revenue statutes are to be construed strictly, with doubts about their meaning and scope resolved in favor of the taxpayer and against the taxing authority").
[13] If the claims were merely refund claims against the Tax Administrator, it is clear that the plaintiffs would be required to exhaust administrative remedies. See § 8-8-27(a).
[14] Under the doctrine of collateral estoppel, "an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings." Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review,854 A.2d 1008, 1014 (R.I. 2004) (internal quotations omitted). Generally, collateral estoppel applies when "(1) the parties are the same or in privity with the parties of the previous proceeding; (2) a final judgment on the merits has been entered in the previous proceeding; (3) the issue or issues in question are identical in both proceedings."Id.
[15] The Tax Administrator's arguments with respect to standing and ripeness are dependent upon the exhaustion of remedies question. Because the Court finds that exhaustion was unnecessary, these arguments also fail. *Page 1